**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

NATIONAL ASSOCIATION OF POSTAL
SUPERVISORS,

      Plaintiff,

v.

UNITED STATES POSTAL SERVICE,

      Defendant.

Case No. 1:19-cv-2236 (RCL)

## <u>DEFENDANT'S MOTION TO DISMISS COMPLAINT</u>

     Defendant, United States Postal Service, by undersigned counsel, respectfully moves to

dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The grounds

for this motion are set forth more fully in the accompanying supporting memorandum.

Respectfully submitted,

JESSIE K. LIU, D.C. Bar #472845
United States Attorney

DANIEL F. VAN HORN, D.C. Bar #924092
Chief, Civil Division

By:   /s/
JEREMY S. SIMON
DC BAR # 447956
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
Tel: (202) 252-2528
Jeremy.Simon@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL ASSOCIATION OF POSTAL SUPERVISORS, <br><br>      Plaintiff, <br><br> v. <br><br> UNITED STATES POSTAL SERVICE, <br><br>      Defendant. | Case No. 1:19-cv-2236 (RCL) |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS COMPLAINT**

The Complaint brought by the National Association of Postal Supervisors ("NAPS") fails to state a claim upon which relief can be granted. In its Complaint, NAPS asserts that the Postal Service's pay determinations violate the Postal Reorganization Act ("PRA") based on alleged failures by the Postal Service to further certain policies pertaining to compensation identified in the PRA in the manner that Plaintiffs would prefer.  As relief, Plaintiff requests that the Court invalidate those pay decisions for field Executive Administrative Schedule ("EAS") employees and order the Postal Service to increase their pay.

As more fully set forth below, Plaintiff has failed to identify a source of law authorizing the Court to review the underlying Postal Service pay decisions.   Plaintiff purports to assert claims based on alleged violations of the PRA, but the PRA does not afford a private cause of action that could support such claims.  Moreover, to the extent Plaintiff's claims challenge the manner in which the Postal Service seeks to achieve certain policies related to compensation in the PRA, judicial review of the Postal Service's decisionmaking in that regard is exempt from review under the Administrative Procedure Act ("APA") (as Plaintiff implicitly recognizes by failing to cite the APA in its Complaint).   In the absence of any claim under the PRA and APA, the only other

potential theoretical avenue of review would be so-called "non-statutory review." However, Plaintiff fails to plead any alleged entitlement to that review, which is available only to determine whether the Postal Service acted *ultra vires,* nor could the allegations actually pled in the Complaint plausibly be read to support such review. Accordingly, NAPS's Complaint should be dismissed for failure to state a claim.

NAPS also alleges that the Postal Service has violated the PRA by failing to consult with NAPS regarding compensation and benefits for all "headquarters" and "area" employees (Count IV) and by failing to recognize its representation of postmasters (Count V). Because there is no private cause of action under the PRA, these claim fails for reasons stated above. Moreover, even if Plaintiff had a private cause of action under the PRA (it does not), NAPS's expansive interpretation of the scope of its representation is not supported by the PRA and also would be prohibited by the National Labor Relations Act. Accordingly, Counts IV and V should be dismissed for this additional reason.

## I.     Background

The PRA created a multi-tiered process to allow postal employees to participate in the Postal Service's compensation and benefits determinations. Non-supervisory employees have collective bargaining rights under the National Labor Relations Act, which applies to the Postal Service so long as it does not conflict with any postal specific law. *See* 39 U.S.C. § 1209. Low level supervisors, postmasters, and managers within the Postal Service have the statutory right to form organizations to consult with the Postal Service about compensation, working conditions, and benefits. 39 U.S.C. § 1004.

In 1980, Congress, concerned by litigation between NAPS and the Postal Service over the same compensation provisions at issue in this case, supplemented the consultation process with

two important additions. Sen. Rep. No. 96-856, 3-4 (July 16, 1980) (noting that Congress was displeased by litigation between NAPS and the Postal Service). First, a supervisors' organization under the statute has the right to request the creation of a fact-finding panel, which would make recommendations about the disputed issues to which the Postal Service would give consideration, and provide a written response to NAPS. 39 U.S.C. § 1004(f). Second, if the organization was displeased with the efficacy of this provision, it also was afforded the right to request the creation of a panel to evaluate the overall efficacy of the consultation and fact-finding process, and any such panel would then provide a report to Congress. *Id.* § 1004(g).

Congress chose those remedies over more adversarial ones, such as arbitration or litigation, because it believed that an adversarial process could damage loyalties between supervisors and the Postal Service, which would harm operational efficacy. Sen. Rep. No. 96-856 (noting that arbitration was rejected because it was too adversarial, and could "impede management responsibility to effectively and efficiently conduct postal operations").

The Complaint challenges the Postal Service's EAS pay package for fiscal years 2016 to 2019 which, according to the allegations in the Complaint, "covered six areas regarding EAS pay and benefits:  Pay for Performance, Salary Ranges, Health Benefits Contribution, Promotional Pay Increase, Position Upgrade, and Work Groups."  (Compl. ¶ 17)   The Postal Service issued a proposed pay package in September 2017 and, following consultation with NAPS, issued a final decision in 2018.  (Compl. ¶¶ 16, 18-19)   On July 6, 2018, NAPS requested a factfinding process under 39 U.S.C. § 1004(f).  (Compl. ¶ 20)   Although allegedly displeased with the Postal Service's response to the recommendations of that process (Compl. ¶¶ 69-74), Plaintiff has not alleged that it requested the creation of a panel to evaluate the overall efficacy of the consultation and fact-finding process and to provide a report to Congress pursuant to 39 U.S.C. § 1004(g).

Plaintiff instead filed this lawsuit in which Plaintiff purports to assert violations of the PRA.   Plaintiff alleges in Count I of the Complaint that the pay package, in its view, fails to achieve the "policy" in 39 U.S.C. § 1003(a) of "'maintain[ing] compensation and benefits for all officers and employees on a standard of comparability to the compensation and benefits for comparable levels of work in the private sector of the economy.'"   (Compl. ¶ 81; 39 U.S.C. § 1003(a) (referring to this provision as a "policy of the Postal Service").   Plaintiff also alleges a failure to meet the "policy" set forth in section 101(c) of "achiev[ing] and maintain[ing] compensation for its officers and employees comparable to the rates and types of compensation paid in the private sector."  (Compl. ¶ 82; 39 U.S.C. § 101 (entitled "postal policy"))   As support for these allegations, Plaintiff alleges the Postal Service failed to conduct certain studies as part of its decisionmaking process and to make certain adjustments that Plaintiff believes would better achieve this "policy."   (Compl. ¶¶ 83-86)   Plaintiff, however, does not identify any statutory provision requiring that such discrete acts be undertaken by the Postal Service.  (*Id.*)

In Count II, Plaintiff alleges that the Postal Service violated the "policy" set forth in section 1004(a) of the PRA to "provide adequate and reasonable differentials in rates of pay between employees in the clerk and carrier grades in the line work force and supervisory and other managerial personnel."  (Compl. ¶ 89; 39 U.S.C. § 1004(a) (referring to this provision as a "policy" of the Postal Service).   As with Count I, Plaintiff supports this allegation by citing to alleged failures by the Postal Service to act in a manner that Plaintiff believes would better achieve this "policy" – i.e., the Postal Service's alleged use of a 5% instead of 15 to 20% differential and an

alleged "overly broad" calculation method – without identifying any statutory mandate to utilize any particular differential or method of calculation.  (Compl. ¶¶ 90-92)[1]

In Count III, Plaintiff alleges a violation of another "policy" set forth in section 1004(a), specifically, the "policy of the Postal Service to 'provide compensation . . . that will assure the attraction and retention of qualified and capable supervisory and other managerial personnel.'" (Compl. ¶ 94)   Plaintiff also relies in this Count on the "policy" contained in section 1004(a) of the Postal Service to "establish and maintain continuously a program for all such personnel that reflects the essential importance of a well-trained and well-motivated force to improve the effectiveness of postal operations."  39 U.S.C. §1004(a).  In that regard, Plaintiff mischaracterizes this section to allege the violation of an "obligation to 'establish and maintain . . . a [compensation] program . . . that reflects the essential importance of a  . . . well-motivated workforce.'" (Compl. ¶ 99)   Plaintiff bases its allegation that these policies have been violated on the conclusory assertion that the Postal Service's pay policies and schedules are, in Plaintiff's view, "inadequate."  (Compl. ¶¶ 96-98)

---

[1]     The flaw in Plaintiff's characterization of section 1004(a), which also underlies its flawed characterization of section 101 and 1003, is similar to the flaw recognized decades ago by the D.C. Circuit when it observed that:  "[t]he greatest flaw in the Associations' interpretation of section 1004(a) is that the text of the Postal Act does not support it. Section 1004(a) does not set a fixed differential of 25% Or any other figure; it does not mandate that management personnel receive increases as much or more than those given rank-and-file workers through the collective bargaining process; it does not hold the agency to an express formula for computing the salary differential; it does not define a precise relationship between the compensation received by one class of postal employees and that received by another. Any one of those options was within the power and ability of Congress to legislate. Congress chose instead to leave the precise differential to the discretion of the agency, mandating only that the differential at any given time be 'adequate and reasonable.'" *Nat'l Ass'n of Postal Supervisors v. U.S. Postal Serv.* ("*NAPS*"), 602 F.2d 420, 433 (D.C. Cir. 1979).

Counts IV and V of the Complaint purport to assert claims based on the scope of NAPS's representation of Postal Service employees in connection with 39 U.S.C. § 1004(b), which provides in relevant part that "[t]he Postal Service shall provide a program for consultation with recognized organizations of supervisory and other managerial personnel who are not subject to collective-bargaining agreements under chapter 12 of this title."  In Count IV, Plaintiff alleges that the Postal Service violated this provision of the PRA by failing to consult with NAPS regarding compensation and benefits for "all" "area" and "headquarters" employees.  (Compl. ¶¶ 100-106)  In Count V, Plaintiff alleges that the Postal Service violated this provision by failing to recognize NAPS's representation of postmasters.  (Compl. ¶¶ 107-115)

## II.     The Complaint Should Be Dismissed for Failure to State a Claim.

### A.  Standard of Review

The question of whether applicable law affords a private right of action or otherwise authorizes any basis for judicial review "goes to whether the plaintiff has stated a claim on which relief can be granted," *Blake v. FBI,* 298 F. Supp. 3d 77, 78 (D.D.C. 2018), and is "'made pursuant to Rule 12(b)(6).'"  *Eagle Trust Fund v. U.S. Serv.*, 365 F. Supp. 3d 57, 63 (D.D.C. 2019) (quoting *Sacks v. Reynolds Sec., Inc.,* 593 F.2d 1234, 1239 (D.C. Cir. 1978)).

Motions to dismiss under 12(b)(6) test the sufficiency of a complaint.  *Smith Thompson v. District of Columbia*, 657 F. Supp. 2d 123, 129 (D.D.C. 2009).  To survive a motion to dismiss, a complaint must contain sufficient factual matter, acceptable as true, to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 566, 570 (2007)).  The Court has referred to this standard as the "plausibility standard."  *Twombly*, 550 U.S at 560-61 (abandoning the "no set of facts" language from *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

6

On a motion to dismiss under Rule 12(b)(6), the Court may consider, in addition to the facts alleged in the complaint, documents attached to, or incorporated into the complaint by reference, as well as matters of which it may take judicial notice. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624-25 (D.C. Cir. 1997); *see also Lipton v. MCI Worldcom, Inc.*, 135 F. Supp. 2d 182, 186 (D.D.C. 2001) ("[T]he court may consider the defendant's supplementary material without converting the motion to dismiss into one for summary judgment. This Court has held that 'where a document is referred' to in the complaint and is central to plaintiff's claims, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment.'").

## B.  The PRA Does Not Afford A Private Cause Of Action.

In order for a private party to sue for violation of a statute, Congress must have provided a right of action, either in the statute itself or elsewhere. NAPS does not identify the source of its alleged cause of action, but it apparently believes that the PRA creates a private right of action for violations of 39 U.S.C. §§ 101, 1003, and 1004. As discussed below, however, no such cause of action has been recognized. The provisions of the PRA relied on by NAPS do not explicitly provide a private right of action, and NAPS does not cite any other provision of the PRA or other law creating a private right of action, explicit or implied.[2] *Johnson v. Interstate Mgmt. Co., LLC*, 849 F.3d 1093, 1097-98 (D.C. Cir. 2017) (explaining that the Supreme Court is "very hostile to implied causes of action").

---

[2]      As discussed more fully in Section II.C below, the APA does not apply to the Postal Service. *See* 39 U.S.C. § 410.

1. **The PRA Does Not Expressly Provide A Private Cause Of Action For Plaintiff's Claims**.

This Court has not previously considered the question of whether any of the provisions cited by NAPS – sections 101, 1003, and 1004 of the PRA – creates a private right of action.[3] However, other courts that have considered these provisions of the PRA have concluded that they do not. *See Williams v. U.S. Postal Service,* No. 17-cv-782, 2018 U.S. Dist. LEXIS 97410, at *6 (W.D. Wis. June 11, 2018) (101 does not create a private right of action); *see also Morris v. Runyon,* 870 F. Supp. 362, 371 (D.D.C. 1994) (explaining that the PRA was intended by Congress to allow the Postal Service to function like a business, and it would undermine the PRA to imply private rights of action).

Courts have reached similar conclusions when addressing other provisions of the PRA. In considering 39 USC § 1001, for instance, the First Circuit explained that the intent of Congress in passing the PRA was to reform the Postal Service, rather than to convey a benefit to its employees, and that because there was not "an unmistakable focus on the benefited class," there was no private right of action. *Gaj v. U.S. Postal Service*, 800 F.2d 64, 68 (3d Cir. 1986) (employee's claim that his rights under the PRA were violated when the Postal Service declined to re-hire him failed because the PRA did not create a private right of action for employees); *see also Blaze v. Payne,* 819 F.2d 128, 129 (5th Cir. 1987) (adopting the reasoning of *Gaj* and dismissing an

---

[3]     The D.C. Circuit previously considered a case brought under section 1004, but did not address the question of a private right of action.  *See NAPS*, *supra* n. 1. The Court in *NAPS* concluded that it had jurisdiction over the suit, and that Congress had not expressly intended to foreclose all judicial review of Postal Service decisionmaking (although it did contemplate a "very restricted judicial role in . . . compensation decisions"), but did not address whether NAPS or other management associations had the right to bring such an action under the PRA or any other statute. *NAPS,* 602 F.2d at 430-32; *see also Nat'l Ass'n of Postmasters v. Runyon*, 821 F. Supp. 775, 777 (D.D.C. 1993) (allowing a lawsuit under 1004(b), because *NAPS v. U.S.* had allowed it, without discussing the existence of a private right of action).   As discussed in Section II.C. below, *NAPS* has been interpreted by the D.C. Circuit as recognizing a very restricted type of review referred to as "non-statutory review."

employee's claim that the Postal service had violated 1001(b) by creating unpleasant working conditions, as 1001(b) did not create a private right of action).

Similarly, several Circuits have held that section 1006, which provides transfer rights to officers and employees of the Postal Service, does not create a private right of action. These courts have reasoned that the fact that Congress already had created a detailed scheme for labor law complaints for workers indicates that it did not intend to provide an alternative to employment law through the PRA. *Stupy v. U.S. Postal Service*, 951 F.2d 1079, 1082 (9th Cir. 1991) ("In the face of these express employee remedies, it would be improper to hold that Congress intended to confer a private right of action under 1006. . . . Similar analysis has led to the conclusion that other employment provisions of the PRA do not create a private right of action."); *Glenn v. U.S. Postal Service*, 939 F.2d 1516, 1527 (11th Cir. 1991) ("This analysis leads inevitably to the conclusion that 39 U.S.C. § 1006 does not provide a private right of action"); *Kaiser v. U.S. Postal Service*, 908 F.2d 47, 51 (6th Cir. 1990) (holding, in the context of § 1006, that "[t]he existence of a myriad of employment remedies compels the finding that Congress did not intend private enforcement of employment rights under the Postal Reorganization Act"); *see also McGarigle v. U.S. Postal Service*, 904 F.2d 687, 692 n.7 (Fed. Cir. 1990) (declining to address whether a private right exists under § 1006, but noting that no court has found one, and that *Gaj,* 800 F.2d at 64, suggests that no private rights of action exist under the PRA).

For the same reason, the PRA does not provide NAPS with an express private right of action upon which to base its current claims under sections 101, 1003 and 1004 of the PRA.

**2. Implied Causes of Action Are Disfavored And One Should Not Be Recognized Here.**

If NAPS's contention is that the cited statutory provisions give rise to an *implied* cause of action, that also fails. The D.C. Circuit has explained that the Supreme Court is "very hostile to implied causes of action[,]" as it requires "conclud[ing] that Congress *intended* to provide a cause of action even though Congress did not expressly say as much in the text of the statute." *Johnson,* 849 F.3d at 1097-98 (emphasis in original). As then Judge Kavanaugh stated for the Court,

> Congress creates federal causes of action. If the text of a statute does not provide a cause of action, there ordinarily is no cause of action. To be sure, on rare occasions, the Supreme Court has recognized *implied* causes of action. To support an implied cause of action, the relevant statute must demonstrate Congress's intent – notwithstanding the lack of an express cause of action – to create a "private right" and a "private remedy." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).

*Id.*

The Supreme Court articulated the test for determining whether Congress intended to provide an implied private right of action in *Cort v. Ash*, 422 U.S. 66 (1975). The factors to be considered are "(1) whether the plaintiff is one of the class for whose benefit the statute was enacted; (2) whether some indication exists of legislative intent, explicit or implicit, either to create or to deny a private remedy; (3) whether implying a private right of action is consistent with the underlying purposes of the legislative scheme; and (4) whether the cause of action is one traditionally relegated to state law[.]"*Tax Analysts v. IRS*, 214 F.3d 179, 185 (2000) (citing *Cort,* 422 U.S. at 78). The D.C. Circuit has explained that the most important of those factors is legislative intent. *Id.* at 186. The D.C. Circuit has also explained, that, while implied remedies were more common in the past, that is not a relevant consideration when determining the existence of private rights of action. *Johnson,* 849 F.3d at 1098 ("the Supreme Court has rejected that kind of time-travel argument before, and we must reject it now").

Here, the indicia of legislative intent indicates that Congress did not intend to create a private right of action allowing a supervisors' organization to challenge pay, benefit and working condition decisions. When Congress passed the PRA, it carefully considered how supervisors and managers should participate in the process of determining their wages. The statute, as originally enacted, stated that "[t]he Postal Service shall provide a program for consultation with recognized organizations of supervisory and other managerial personnel who are not subject to collective bargaining . . . [These organizations] shall be entitled to participate directly in the planning and development of pay policies and schedules [and other benefits]." The Senate report on the PRA explained that "participate" was chosen because of the in-between circumstances of Postal Service supervisors. S. Rep. 91-912, 7 (June 3, 1970).  Consultation was appropriate for senior management, and collective bargaining was appropriate for craft employees, while "[t]he supervisor on the workroom floor" should have more than mere consultation, but less than collective bargaining. *Id.* The report further explained that the committee believed that supervisors' complaints about their salaries had some validity, but rejected calls for a fixed differential, "not wishing to impose a binding statutory requirement[.]" *Id.*

In a situation where Congress carefully examined a range of potential methods of ensuring that the pay comparability and differential requirements were observed, and determined that the best way to do this was to allow supervisors to participate in the process of determining salaries, rather than imposing any binding requirement, it would be inappropriate for a court to impose additional remedies not intended by Congress. This is particularly true where Congress expressly foreclosed traditional collective bargaining, and attendant interest arbitration, for postal supervisors, because it considered the process too adversarial.

Moreover, the 1980 Postal Service Dispute Resolution Act further confirms the absence of any intention by Congress to imply a private cause of action.  The Dispute Resolution Act provides two remedies when a supervisors' organization believes the Postal Service's decisions are "not in accordance with the provisions of [39 USC]."  First, a supervisors' organization may call for a fact-finding panel, which will make recommendations that the Postal Service must consider. 39 U.S.C.  1004(f). Second, if the organization is unhappy with the results of the fact-finding, or does not believe the Postal Service is giving the recommendations due consideration, the organization may request the creation of a panel to review the effectiveness of the consultation and fact-finding process which will then make recommendations to Congress. *Id*. at 1004(g).

The D.C. Circuit has explained that the existence of a remedial structure that does not include a private cause of action is strong evidence that Congress did not intend to provide a cause of action. *See e.g. United States v. Monzel*, 641 F.3d 528, 542 (2011) (quoting *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 (1979)) ("where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it"). Here, where Congress provided both a detailed dispute resolution process, and the ability to appeal failures of that process to Congress, without mentioning or providing a cause of action, the implication is that Congress intended the system it created to provide the exclusive available remedies.

The legislative history of the Dispute Resolution Act confirms that textual interpretation. The Senate report on the legislation explains that Congress was displeased by the litigation in this Court between NAPS and the Postal Service, and set out to write legislation that would "make it more likely that the parties can resolve their differences through improved consultation, rather than through the courts." Sen. Rep. No. 96-856, 3-4 (July 16, 1980). Initial versions of the bill accomplished this by providing a binding arbitration procedure between the supervisors'

organization and the Postal Service. *Id*. Congress determined, however, that this could blur loyalties among management and create an adversarial system that would "impede management responsibility to effectively and efficiently conduct postal operations." *Id*. Instead, therefore, Congress chose to create a "procedure which, while not binding, nonetheless requires a public finding." *Id*. It would be very odd for Congress to reject binding arbitration as too adversarial and detrimental to relations among supervisors, while also intending to provide a private right of action allowing for a far more adversarial litigation process in federal court. Accordingly, there is no implied right of action under the PRA, and the Complaint should be dismissed for failure to state a claim.

### C.   No Other Source of Law Establishes a Right of Review of the Postal Service's Pay Determinations.

The PRA is the only source of law cited in the Complaint as a basis for Plaintiff's claims. Although Plaintiff's claims – in particular, those alleged in Counts I to III – appear to seek judicial review of agency decisionmaking in a manner akin to that afforded under the APA, it is well-settled that the Postal Service's decisionmaking is exempt from judicial review under that statute, which accounts for the absence of any reference to the APA in the Complaint. *See* 39 U.S.C. § 410 (stating that, with certain exceptions, "no Federal law dealing with public or Federal contracts, property, works, officers, employees, budgets, or funds, including the provisions of chapters 5 and 7 of title 5, shall apply to the exercise of the powers of the Postal Service"); *see also Mittleman v. Postal Regulatory Comm'n,* 757 F. 3d 300, 305 (D.C. Cir. 2014) ("[a]s a consequence, we have observed that 'the Postal Service is exempt from review under the Administrative Procedure Act.'"); *N. Air Cargo v. U.S. Postal Serv*., 674 F. 3d 852, 858 (D.C. Cir. 2012) (same).

In the absence of a claim under the PRA or judicial review under the APA, the only other potential theoretical basis for Plaintiff's claims would be so-called "non-statutory" review, which the D.C. Circuit has recognized may be available "for certain Postal Service decisions, notwithstanding the preclusion of APA review under 39 U.S.C. § 410(a)." *Mittleman*, 757 F.3d at 307.  But that type of review is exceedingly narrow.  Although the D.C. Circuit has offered varying descriptions of the narrow scope of this review in the past,[4]  the Court's current articulation is that it is "available only to determine whether the agency has acted *ultra vires* – that is, whether it has exceeded its statutory authority."  *Id.*.   Indeed, after discussing those prior decisions, the D.C. Circuit has recently confirmed that the standard is that stated in *Mittleman,* namely, whether the Postal Service has "'exceeded its statutory authority.'"  *Sears, Roebuck & Co. v. U.S. Postal Serv.*, 844 F.3d 260, 265 (D.C. Cir. 2016);[5] *see also Eagle Trust Fund v. U.S. Postal Serv.*, 365 F. Supp. 3d 57, 67 (D.D.C. 2019) (dismissing complaint against the Postal Service based on the failure to plausibly plead facts that could meet the *Mittleman* standard).

---

[4]      For instance, in *NAPS*, *supra* notes 1 and 3, the Court recognized a "very restricted judicial role in the Postal Service's compensation decisions" under section 1004 of the PRA. *NAPS*, 602 F.2d at 432.   The Court explained that its review was limited to whether the Postal Service considered factors that it was required to consider in making its discretionary determination regarding compensation and that, if the Postal Service has done so, then it "has performed its duty under section 1004 and judicial inquiry is at an end."  *Id.* at 435. Here, Plaintiff has not alleged that the Postal Service failed to consider factors mandated in the statute.  Rather, Plaintiff alleges that the Postal Service failed to take certain discrete steps that, although not statutorily required, would in Plaintiff's view better achieve the statutory objectives.  Thus, Plaintiff has failed to plausibly plead a claim for non-statutory review even under the standard set forth in *NAPS.*

[5]      The Court in *Sears* ultimately permitted "reasoned decisionmaking review" in that case only because the Postal Service apparently had waived the defense that it was exempt from APA review at the trial level and conceded on appeal that the reasoned decisionmaking standard of the APA applied in that case.  *Sears,* 844 F.3d at 265-66 (observing that, otherwise, there would be "a question as to whether reasoned decision-making review can be squared with the seemingly more limited scope of review outlined in . . . *Mittleman*").

Plaintiff, however, neither purports to rely on a "non-statutory" review theory as a basis for its claims, nor does Plaintiff plead any facts that plausibly could give rise to a claim that the Postal Service exceeded its statutory authority in its decisionmaking with respect to the challenged pay package.   To the contrary, the counts of the Complaint that challenge the Postal Service's decisionmaking in that regard (Counts I to III) focus on alleged failures to act by the Postal Service with respect to matters within the Postal Service's discretion under the PRA, not on affirmative conduct by the Postal Service allegedly outside the bounds of the statute that potentially could be subject to non-statutory review.    Thus, Plaintiff has failed to plausibly plead facts that could support review under a "non-statutory" review theory.   *See Eagle Trust Fund,* 365 F. Supp. 3d at 67 (dismissing complaint against Postal Service for failure to plausibly plead *ultra vires* action by the Postal Service).

### D.  NAPS Represents Supervisors Only, Not Employees, Managers, or Postmasters.

Although acknowledging that the Postal Service consulted with NAPS (Compl. ¶ 18), Plaintiff alleges in Count IV of the Complaint that the Postal Service violated section 1004(b) of the PRA because that consultation allegedly did not extend to "all" "headquarters" and "area" employees, which NAPS contends that it represents.  In Count V of the Complaint, Plaintiff alleges that that the Postal Service violated section 1004(b) of the PRA by refusing to recognize NAPS's representation of postmasters.   Section 1004(b) provides that:

> The Postal Service shall provide a program for consultation with recognized organizations of supervisory and other managerial personnel who are not subject to collective-bargaining agreements under chapter 12 of this title [39 USCS §§ 1201 et seq.]. Upon presentation of evidence satisfactory to the Postal Service that a supervisory organization represents a majority of supervisors, that an organization (other than an organization representing supervisors) represents at least 20 percent of postmasters, or that a managerial organization (other than an organization representing supervisors or postmasters) represents a substantial percentage of managerial employees, such or-

ganization or organizations shall be entitled to participate directly in the plan-
ning and development of pay policies and schedules, fringe benefit programs,
and other programs relating to supervisory and other managerial employees.

*See* 39 U.S.C. § 1004(b).

For reasons discussed above, Plaintiff does not have a private right of action under the PRA to assert any such claims under section 1004(b).   But even if it did, as a supervisors' organization, NAPS does not have the right to participate in pay consultations with the Postal Service involving any non-supervisory EAS employees.   NAPS also does not have the right to participate in pay consultations with the Postal Service involving managerial employees (which are a distinct category from "supervisors" within the meaning of section 1004(b)) or postmasters (which also is a distinct category).   Instead, NAPS's scope of representation, within the context of section 1004(b), is limited to those employees that fall within the category of supervisory EAS employees. Postmasters are thus excluded from the scope of NAPS's representation, as are most "area" and "headquarter" EAS employees.[6]

Count IV of the Complaint is premised on an erroneous understanding of the scope of NAPS's representation.   According to Plaintiff's own allegations, the "nearly 50,000" EAS employees at the Postal Service (Compl. ¶ 1) "are distributed among 1,000 job titles and job levels" and include not just supervisors but also "managers, . . ., postmasters, and other professionals and administrative employees." (Compl. ¶¶ 6-7) Despite this acknowledgment, Plaintiff alleges in

---

[6]       Although the Postal Service acknowledges that some "area" and "headquarters" EAS em-
ployees would qualify as supervisors subject to NAPS representation, most do not fall within that
category as Plaintiff implicitly recognizes by acknowledging that EAS employees "are distributed
among over 1,000 job titles and job levels" and include not just supervisors, but also "managers, .
. . postmasters, and other professionals and administrative employees."  (Compl. ¶¶ 6-7)   EAS
personnel also include technical and clerical employees. Employee and Labor Relations Manual
("ELM") § 411.1. (https://about.usps.com/manuals/elm/elmc4.pdf) The ELM is a regulation of the
Postal Service. *See* 39 C.F.R. § 211.2.

Count IV that "all EAS employees" qualify for representation by NAPS within the meaning of section 1004(b) (Compl. ¶ 102)[7] and, on that basis, alleges that the Postal Service "has failed entirely to consult with NAPS with respect to Headquarters and Area EAS employees." (Compl. ¶ 104) Although the Postal Service acknowledges that some "headquarters" and "area" EAS employees qualify as supervisors who fall within the scope of NAPS's representation, Plaintiff vastly overstates the scope of its representation in stating this claim, as EAS employees also include professional, technical, administrative and clerical employees. (ELM § 410) Thus, because this Count is based on an implausible premise concerning the scope of NAPS's representation of EAS employees, it should be dismissed for failure to state a claim. Similarly, Count V should be dismissed because the NAPS does not represent postmasters and, therefore, the Postal Service could not violate section 1004(b) by failing to consult with the NAPS in that capacity.

### 1. The PRA Does Not Afford NAPS The right To Represent Non-Supervisors.

Section 1004(b) grants three types of organizations consultation rights under the PRA: "a supervisory organization" representing "a majority of supervisors[;]" a postmaster organizations that represents "at least 20% of postmasters[;]" and "a managerial organization" that "represents a substantial percentage of managerial employees[.]" The statute explicitly prohibits one group from fulfilling multiple functions by stating that a postmaster organization must be one "other than an organization representing supervisors" and that an organization representing "other managerial

---

[7]    In other words, NAPS alleges that it is entitled to represent and to consult on behalf of approximately 50,000 EAS personnel, including active and retired managers, supervisors, postmasters, professionals, and all other EAS employees, excluding only approximately 8,500 postmasters represented by another organization.  (Compl. ¶¶ 1, 21-23, 33-34, 42, 57, 87, 102-103, 116A.i-ii, vi)   In addition to managers, supervisors and postmasters, EAS personnel include professional and administrative employees in approximately 1,000 job titles  (Compl. ¶¶ 6-7).

employees" must be one "other than an organization representing supervisors or postmasters." 39 U.S.C. § 1004(b). The PRA does not permit a supervisors' organization to represent and consult on behalf of any EAS professional and administrative personnel. Accordingly, an organization representing supervisors may consult only for supervisors, a managers' organization only for managers, and a postmasters' organization only for postmasters. NAPS, which is an organization representing supervisors, is thus limited to consult only for supervisors. Its assertion that the PRA allows it to represent all three groups – supervisors, managers, and postmasters – as well as all other EAS personnel (Compl. ¶102) runs counter to the text of the Act, and thus should be rejected.

That textual conclusion is supported by the history of postal legislation. When Congress created the fact-finding process in 1980, it only mentioned fact-finding rights for supervisors. *See* S. Rep. No. 96-856 (1980), 1980 WL 13081 (Leg. Hist.), at 1. Indeed, the Senate Report specifically notes that the categories of employees recognized as represented by the supervisors' organization are defined by a Memorandum of Understanding signed on May 3, 1978, by the Postmaster General and the President of NAPS, which specifically excludes postmasters from NAPS representation. *Id*. at 5. Further, the Report states that the Committee believes that the May 3, 1978 MOU "fairly implements the representation provisions of Section 1004(B)" and "[t]he Committee does not intend the bill to expend [sic] or contract the representation of the supervisors' organization." *Id*. at 6.

Similarly, in 2003, when Congress extended parallel consultation rights for postmasters in the Postmasters Equity Act, the accompanying Senate Report explained that, prior to the Act, postmasters did not have the same ability to vindicate their rights as supervisors, and that the purpose of the legislation was to afford postmasters and postmasters' organizations the same pay

consultation rights enjoyed by supervisors. *See* S. Rep. No. 108-86 (2003), 2003 WL 21734244, at 1-2.

The Report noted that the "key distinction" between a postmaster and supervisor was that front-line supervisors tend to be supervised by a postmaster at a post office, and that the postmaster is the "manager-in-charge." *Id.* at 2. Finally, the Report recognized that "[t]hese two groups of managers are under the same pay and compensation system, but they discuss these issues separately with the Postal Service." *Id.* Thus, the legislative history of the two statutes creating consultation rights for postmasters and supervisors clearly recognized the distinct and separate status of supervisor and postmaster organizations, and the fact that the two groups discussed pay issues with the Postal Service separately.

> **2. Even If NAPS's Representation Of Non-Supervisors Were Permissible Under The PRA, the NLRA prohibits NAPS From Representing Non-Supervisory Personnel That Are Or May Be Subject To Collective Bargaining Without Majority Support.**

Even if this Court were to find that the PRA does not forbid NAPS from representing non-supervisors, such representation is inconsistent with the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151-159. The National Labor Relations Act provides, that:

> [e]mployees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all such activities [.]

29 U.S.C. § 157. The NLRA applies to the Postal Service, "to the extent not inconsistent with [title 39]." 39 U.S.C. § 1209.

Under the NLRA, the Postal Service is only allowed to recognize and deal with an organization that has demonstrated that it represents a majority of a particular group of employees. 29 U.S.C. § 159. NAPS has not so demonstrated vis-à-vis EAS employees that do not fall into the

"supervisor" category, and does not allege that it has in its Complaint.  It likewise has failed to allege that it has provided any evidence to the Postal Service of such support or that it ever has petitioned for an NLRB election.[8] Because NAPS has not pled facts that establish it has demonstrated majority support to the Postal Service, it would constitute an unfair labor practice for the Postal Service and NAPS to consult about the salary and working conditions of employees that fall outside the supervisors category (such as postmasters, managers and "other professional and administrative employees" (Compl. ¶ 6)).  Accordingly, because NAPS is prohibited from representing non-supervisor EAS employees, the Postal Service could not have violated the PRA by failing to consult with the NAPS in that capacity.

## CONCLUSION

For the foregoing reasons, the motion to dismiss should be granted.


Respectfully submitted,

JESSIE K. LIU
D.C. BAR # 472845
United States Attorney

DANIEL F. VAN HORN
D.C. BAR # 924092
Civil Chief

By:  ___/s/ Jeremy S. Simon_____
JEREMY S. SIMON, D.C. BAR #447956
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-2528
Jeremy.simon@usdoj.gov

*Counsel for United States Postal Service*

---

[8]      Moreover, 39 U.S.C. § 1202(1) forbids the NLRB from including in any bargaining unit of employees "any management official or supervisor."    Thus, NAPS can represent *only* supervisors – the NLRB is prohibited from including supervisors and line employees in the same group of employees.

OF COUNSEL:

ERIN E. LYNCH
Chief Counsel, Labor Law
Office of the General Counsel
United States Postal Service

TERENCE F. FLYNN
Attorney, Employment and Labor Law
Office of the General Counsel
United States Postal Service

MARK A. LIPPELMANN
Attorney, Employment and Labor Law
Office of the General Counsel
United States Postal Service

MICHAEL D. WEAVER
Attorney, Legal Strategy
Office of the General Counsel
United States Postal Service