**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

NATIONAL ASSOCIATION OF            *
POSTAL SUPERVISORS,
                                   *

    Plaintiff,
                                   *       Case No. 1:19-cv-2236 (RCL)

v.                                 *

UNITED STATES POSTAL SERVICE,      *

    Defendant.                     *

                                   *

        *   *   *   ooo0ooo   *   *   *

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S**
**<u>MOTION TO DISMISS COMPLAINT</u>**

November 20, 2019

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    FACTS ................................................................................................................ 3

    A.    The Postal Service's FY 2016–2019 pay package for "Field EAS employees" violates the Postal Reorganization Act. ................................... 3

    B.    The Postal Service failed to consult with NAPS regarding compensation ............ 8

III.   ARGUMENT ....................................................................................................... 9

    A.    NAPS has a private right of action for non-statutory review of the Postal Service's violations of the PRA's requirements regarding compensation and the scope of NAPS's representation. ...................................................... 9

        1.    The D.C. Circuit held 40 years ago that NAPS's claim are reviewable. .. 10

        2.    The 1980 amendments to the PRA did not strip NAPS of its right of action. ......................................................................................... 11

    B.    NAPS's claims fall within the scope of non-statutory review. ............................ 14

    C.    The PRA entitles NAPS to represent all supervisory and managerial employees, including those who work at "headquarters" or "area" locations and including postmasters. ................................................................... 19

        1.    The Postal Service's interpretation of § 1004(b) cannot be squared with the plain language of the statute. ..................................... 20

        2.    The Postal Service's reliance on legislative history cannot alter the plain text of the statute and, in any event, is unconvincing. ................. 24

        3.    The Court should decline the Postal Service's request for findings of mixed fact and law. ...................................................................... 25

        4.    The National Labor Relations Act does not apply to this case. ................ 27

IV.   CONCLUSION ................................................................................................. 28

# TABLE OF AUTHORITIES

**Cases**

*62 Cases, More or Less, Each Containing Six Jars of Jam v. United States,*
  340 U.S. 593 (1951) .......................................................................................................... 24

*Abbott Labs. v. Gardner,*
  387 U.S. 136 (1967) ............................................................................................................ 9

*Aid Ass'n for Lutherans v. U.S. Postal Serv.,*
  321 F.3d 1166 (D.C. Cir. 2003) .............................................................................. 15, 16, 17

*B.R. ex rel. Rempson v. District of Columbia,*
  524 F. Supp. 2d 35 (D.D.C. 2007) ..................................................................................... 25

*Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc.,*
  502 U.S. 32 (1991) ............................................................................................................ 14

*Blaze v. Payne,*
  819 F.2d 128 (5th Cir. 1987) ............................................................................................. 13

*Bowen v. Mich. Acad. of Family Physicians,*
  476 U.S. 667 (1986) ...................................................................................................... 9, 11

*Cobell v. Babbitt,*
  52 F. Supp. 2d 11 (D.D.C. 1999) .................................................................................. 15, 18

*Fox v. Clinton,*
  684 F.3d 67 (D.C. Cir. 2012) ............................................................................................. 15

*Gaj v. U.S. Postal Serv.*
  800 F.2d 64 (3d Cir. 1986) ................................................................................................ 13

*Glenn v. U.S. Postal Serv.,*
  939 F.2d 1516 (11th Cir. 1991) .......................................................................................... 13

*Greater Boston Television Corp. v. FCC,*
  444 F.2d 841 (D.C. Cir. 1970) ........................................................................................... 15

*Johnson v. Transp. Agency, Santa Clara Cty.,*
  480 U.S. 616 (1987) .......................................................................................................... 11

*Kaiser v. U.S. Postal Serv.,*
  908 F.2d 47 (6th Cir. 1990) ............................................................................................... 13

*Long v. United States,*
  604 F. Supp. 2d 119 (D.D.C. 2009) .................................................................................... 27

*Loving v. I.R.S.,*
  742 F.3d 1013 (D.C. Cir. 2014) ......................................................................................... 22

*McGarigle v. U.S. Postal Serv.,*
  904 F.2d 687 (Fed. Cir. 1990) ........................................................................................... 13

*Miller v. Dep't of Navy,*
  562 U.S. 562 (2011) .......................................................................................................... 24

*Mittleman v. Postal Regulatory Comm'n,*
    757 F.3d 300 (D.C. Cir. 2014) ........................................................................ 15

*Morall v. Drug Enf't Admin.,*
    412 F.3d 165 (D.C. Cir. 2005) ........................................................................ 18

*Morris v. Runyon,*
    870 F. Supp. 362 (D.D.C. 1994) ..................................................................... 13

*Nat'l Ass'n of Postal Supervisors v. Runyon,*
    821 F. Supp. 775 (D.D.C. 1993) ......................................................... 13, 14, 23

*Nat'l Ass'n of Postal Supervisors v. U.S. Postal Serv.,*
    602 F.2d 420 (D.C. Cir. 1979) ................................................................. passim

*R.I. Dep't of Envtl. Mgmt. v. United States,*
    304 F.3d 31 (1st Cir. 2002) ............................................................................ 14

*Reese Bros. v. U.S. Postal Serv.,*
    905 F. Supp. 2d 223 (D.D.C. 2012) ................................................................ 15

*S. Cal. Edison v. U.S. Postal Serv.,*
    134 F. Supp. 3d 311 (D.D.C. 2015) ........................................................... 15, 18

*S.E.C. v. RPM Int'l, Inc.,*
    282 F. Supp. 3d 1 (D.D.C. 2017) .................................................................... 26

*Sears, Roebuck & Co. v. U.S. Postal Serv.,*
    844 F.3d 260 (D.C. Cir. 2016) ........................................................................ 16

*Siegel v. S.E.C.,*
    592 F.3d 147 (D.C. Cir. 2010) ........................................................................ 15

*Stromberg Metal Works, Inc. v. Press Mech., Inc.,*
    77 F.3d 928 (7th Cir. 1996) ............................................................................ 24

*Stupy v. U.S. Postal Serv.,*
    951 F.2d 1079 (9th Cir. 1991) ........................................................................ 13

*Traynor v. Turnage,*
    485 U.S. 535 (1988) .......................................................................................... 9

*Williams v. U.S. Postal Serv.,*
    No. 17-cv-782-bbc, 2018 WL 2899711 (W.D. Wis. June 11, 2018) ..................... 13

**Statutes**

Postal Reorganization Act, Pub. L. No. 91-375, 84 Stat. 719 (1970) ........................... 1

39 U.S.C. § 101 ......................................................................................... 3, 5, 10, 13

39 U.S.C. § 1001 ..................................................................................................... 13

39 U.S.C. § 1003 ............................................................................................. 3, 5, 10

39 U.S.C. § 1004 ............................................................................................. passim

39 U.S.C. § 1006 ..................................................................................................... 13

39 U.S.C. § 1201 .................................................................................................................... 5

39 U.S.C. § 1202 .................................................................................................................. 27

39 U.S.C. § 1209 .................................................................................................................. 27

**Legislative History**

126 Cong. Rec. 20,741 (1980) ............................................................................................. 12

H.R. 827, 96th Cong. (1979) ............................................................................................... 12

S. Rep. No. 108-112 (2003) ................................................................................................. 25

S. Rep. No. 96-856 (1980) ................................................................................... 9, 11, 12, 25

## I.     INTRODUCTION

The National Association of Postal Supervisors ("NAPS") has alleged that the United States Postal Service has violated both the substantive and procedural requirements of the Postal Reorganization Act ("PRA," or "the Act"), Pub. L. No. 91-375, 84 Stat. 719 (1970) (codified as amended in scattered sections of 39 U.S.C.). In the PRA, Congress recognized that the many tens of thousands of postal supervisors, managers, administrators, and others in the "Executive and Administrative Service" ("EAS"), while not entitled to full bargaining rights, should nonetheless be entitled to certain rights regarding compensation and to representation by collective organizations. Congress required that the Postal Service (1) pay its supervisory and managerial personnel comparably to the private sector; (2) pay supervisory and other managerial personnel a reasonable pay differential above the clerks and carriers; and (3) pay those supervisory and other personnel sufficiently to maintain a well-motivated workforce. It also required the Postal Service to consult with the organization or organizations representing supervisory and other managerial personnel regarding pay policies and schedules, benefits, and other programs that affect those employees. The Postal Service has met none of those requirements. As alleged by NAPS and as found unanimously by a three-person factfinding panel appointed by the Federal Mediation and Conciliation Service pursuant to the PRA, the Postal Service has violated its statutory obligations to NAPS members to ensure pay comparability with the private sector, a reasonable supervisory differential, and sufficient pay to attract a qualified and motivated workforce.

In its Motion to Dismiss, the Postal Service does not (and cannot at this stage) deny that it has violated the PRA in all those respects. Instead, it makes three arguments: (1) NAPS lacks a private right of action to enforce the rights granted to it by the PRA; (2) only a "postmasters' organization" can represent postmasters; and (3) NAPS cannot represent all of the supervisors,

managers, and administrative employees whom the Postal Service has chosen to categorize as "Headquarters" or "Area" EAS employees.

The Postal Service's argument that NAPS has no private right of action has been previously considered and rejected by the D.C. Circuit in *National Association of Postal Supervisors v. U.S. Postal Service*, 602 F.2d 420 (D.C. Cir. 1979) ("*NAPS v. USPS*"). In that decision, the circuit court held that NAPS could bring suit for non-statutory review of the Postal Service's pay packages and policies. Shortly after that decision, Congress amended the PRA. In enacting that amendment, Congress specifically cited the *NAPS v. USPS* case and said that it wanted to reduce, but not eliminate, the possibility of litigation between supervisors' organizations and the Postal Service.

With respect to the approximately 13,600 postmasters—whom the Postal Service acknowledges are a subgroup of its EAS supervisory and managerial personnel—the Postal Service misreads the Act. The PRA provides three separate routes to qualifying for recognition as an "organization of supervisory and other managerial personnel who are not subject to collective-bargaining agreements." 39 U.S.C. § 1004(b). NAPS qualifies under the first—as a "supervisory organization [that] represents a majority of supervisors"—and so is "entitled to participate directly in the planning and development of pay policies and schedules, fringe benefit programs, and other programs relating to supervisory and other managerial employees." *Id.* Because postmasters are indisputably a subset of "supervisory and other managerial employees," NAPS is entitled to participate directly (along with proposed intervenor United Postmasters and Managers of America ("UPMA")) in the development of pay and other programs related to postmasters, as NAPS's approximately 4,100 postmaster-members desire it to do.

The Postal Service points to nothing in the PRA that allows it to carve out a portion of its EAS employees, label them as "Headquarters" or "Area" employees (terms not found in the Act), and declare that, unlike all other supervisory and managerial employees, they have no right to representation by any organization. Despite this categorical argument, in practice the Postal Service has recognized that NAPS represents some supervisory and managerial positions among its Headquarters and Area EAS employees (including some administrative support positions), but refuses to recognize it as representing all such employees. Again, the PRA provides that NAPS, as a "supervisory organization," is "entitled to participate directly in the planning and development of pay policies" and other programs "relating to supervisory and other managerial personnel who are not subject to collective-bargaining agreements," 39 U.S.C. § 1004(b)—a category that includes all "Headquarters" and "Area" EAS employees.

## II.    FACTS

### A.    The Postal Service's FY 2016–2019 pay package for "Field EAS employees" violates the Postal Reorganization Act.

Congress has established both substantive and procedural parameters within which the Postal Service must operate when designing its compensation plan for supervisory and managerial employees. The Postal Service's FY 2016–2019 pay package fails to abide by these requirements.

The PRA requires the Postal Service "to maintain compensation and benefits for all officers and employees on a standard of comparability to the compensation and benefits paid for comparable levels of work in the private sector of the economy." 39 U.S.C. § 1003(a); see also *id.* § 101(c) (same). Any compensation policy must also "provide adequate and reasonable differentials in rates of pay between employees in the clerk and carrier grades in the line work force and supervisory and other managerial personnel." *Id.* § 1004(a). Finally, the PRA directs

the Postal Service "to provide compensation . . . that will assure the attraction and retention of qualified and capable supervisory and other managerial personnel; . . . [and] to establish and maintain continuously a program for all such personnel that reflects the essential importance of a well-trained and well-motivated force." *Id.*

Procedurally, the PRA requires the Postal Service to create a consultation process whereby "recognized organizations of supervisory and other managerial personnel who are not subject to collective-bargaining agreements . . . shall . . . participate directly in the planning and development of pay policies and schedules . . . relating to supervisory and other managerial employees." *Id.* § 1004(b). As part of that process, the Postal Service must give a recognized supervisors' organization the opportunity to make recommendations regarding pay policies or schedules relating to its members. *Id.* § 1004(d)(2)(B). The Postal Service must give "full and fair consideration" to such recommendations, "including the providing of reasons to the organization if any of such recommendations are rejected." *Id.* § 1004(d)(2)(C).

If the Postal Service and a supervisors' organization cannot agree on a compensation scheme, the supervisors' organization may request that a factfinding panel be convened to find facts and make recommendations to resolve the dispute. *Id.* § 1004(f).

Although it may reject recommendations from a supervisors' organization and/or factfinding panel, the Postal Service does not have unfettered discretion in compensating its managers and supervisors—it must follow the requirements of the PRA.

NAPS is a "recognized organization[] of supervisory and other managerial personnel" within the meaning of 39 U.S.C. § 1004(b). Compl. ¶ 2, ECF No. 1. NAPS's membership includes approximately 27,000 active and retired Postal Service managers, supervisors,

postmasters, and other professionals who are not subject to collective bargaining. Compl. ¶ 2. These employees are also referred to as EAS employees. *See* Compl. ¶ 1.

In September 2017, the Postal Service sent NAPS its EAS Pay Package Proposal/Fiscal Years 2016–2019/Field EAS Employees ("2016–2019 Pay Package"). Compl. ¶ 16. NAPS and the Postal Service consulted over the proposal until June 2018. Compl. ¶ 18. On June 28, 2018, the Postal Service issued its "final" 2016–2019 Pay Package, in which it rejected most of NAPS's recommendations. Compl. ¶¶ 19, 52.[1] The Postal Service failed to provide NAPS with any reasons, explanations, or support underlying its decision to ignore NAPS's input. Compl. ¶¶ 53–54.

Under both the "final" 2016–2019 Pay Package that it sent to NAPS in the summer of 2018 and in the slightly modified "final" version it sent to NAPS in the spring of 2019 after the factfinding panel issued its recommendations, the Postal Service's compensation system for its EAS employees violates the PRA in three major respects: First, the Postal Service fails to pay its supervisors and managers comparably to their counterparts in the private sector, as required by 39 U.S.C. §§ 101(c) and 1003(a). Compl. ¶¶ 21–34, 81–87. Second, the Postal Service fails to provide an adequate and reasonable differential in pay between supervisory and managerial personnel and clerks and carriers, as required by 39 U.S.C. § 1004(a). Compl. ¶¶ 35–41, 88–92. Indeed, the Postal Service pays thousands of supervisors a base salary that is *less* than the base salary it pays to tens of thousands of the craft employees[2] they supervise. Compl. ¶¶ 35, 38–39. Thousands of additional supervisors earn less than those they supervise when overtime is included, as the craft employees earn overtime at a more rapid rate than their supervisors do.

---

[1] The Postal Service revised the pay package slightly on July 20, 2018. Compl. ¶ 19.

[2] "Craft" employees are non-managerial employees who are represented by collective bargaining units under 39 U.S.C. § 1201 *et seq.*

Compl. ¶¶ 40. Third, the Postal Service fails to provide adequate compensation to its EAS employees sufficient to maintain a well-motivated workforce or to attract qualified and capable supervisory personnel, as required by 39 U.S.C. § 1004(a). Compl. ¶¶ 42–51.

In July 2018, NAPS requested a factfinding panel pursuant to the PRA's dispute resolution provision, 39 U.S.C. § 1004(f). Compl. ¶ 20. The parties presented their cases to the panel, which issued its unanimous report and recommendations in April 2019. Compl. ¶¶ 1, 66. The factfinding panel largely agreed with NAPS that the 2016–2019 Pay Package failed to comply with the PRA's compensation standards. *See* Compl. ¶ 67. Specifically, the panel found that (1) the Postal Service violated its obligations under the PRA by issuing its 2016–2019 Pay Package without conducting any market survey examining comparable levels of work in the private sector, Compl. ¶ 67(a); (2) the Postal Service's compensation plan is substantially below market rates, a failing that is exacerbated by the Postal Service's failure to provide locality pay, Compl. ¶ 67(d)–(e); (3) the Postal Service used an excessively broad-based calculus for the Supervisory Differential Adjustment ("SDA"), a system intended to maintain a 5% differential between EAS and craft employee salaries, Compl. ¶¶ 37–38, and failed to adequately increase EAS salary maximums, resulting in unreasonable and inadequate pay differentials between EAS employees and the craft employees they supervise, Compl. ¶ 67(b); (4) the SDA, as applied, contributes to the Postal Service's failure to attract qualified and capable supervisory staff, Compl. ¶ 67(c); and (5) the Pay for Performance ("PFP") system and absence of locality pay contribute to the Postal Service's failure to satisfy its statutory obligations to maintain a well-motivated, qualified workforce, Compl. ¶ 67(d)–(e).

To cure the deficiencies in the FY 2016–2019 Pay Package's compliance with the PRA, the factfinding panel made several recommendations. It recommended that Field EAS employees

receive retroactive raises in base pay and lump sums for FY 2017 and 2018. Compl. ¶ 68(a). It recommended that the Postal Service and NAPS establish a joint work group to: (1) address problems with the SDA and PFP systems; (2) examine instituting locality pay and a cost-of-living adjustment; and (3) engage a mutually selected mediator and compensation expert. Compl. ¶ 68(c)–(g). The panel also recommended that changes made as part of the July 20, 2018, revisions to the pay package be applied as of that date. Compl. ¶ 68(b). Finally, the panel recommended that the joint work group issue a report and recommendation within six months after the Postal Service's final decision, Compl. ¶ 68(h), and that the Postal Service explain in writing any reasons for rejecting the joint work group or mediator's recommendations, Compl, ¶ 68(i).

In May 2019, the Postal Service issued a new final 2016–2019 Pay Package that is little changed from the proposal the factfinding panel determined violated congressional directives. Compl. ¶ 69. It contains the same PFP matrix for calculating pay raises, does not include locality pay, maintains the SDA at 5%, provides for no retroactive salary increases, and does not make any of its revisions retroactive to July 2018. Compl. ¶¶ 71–73. Finally, while the Postal Service agreed to convene a joint work group, it refused to involve a mediator or compensation expert, depriving the work group of the expertise needed to bring the Postal Service into compliance with the PRA's requirements. Compl. ¶ 74.[3] The final 2016–2019 Pay Package does not differ in

---

[3] Although the Postal Service suggests that NAPS ought to have then "requested the creation of a panel to evaluate the overall efficacy of the consultation and factfinding process and to provide a report to Congress pursuant to 39 U.S.C. § 1004(g)," Def.'s Mem. Supp. Mot. Dismiss ("Def.'s Mem.") 3, ECF No. 11, it does not, and cannot, argue that NAPS failed to administratively exhaust. Section 1004(g) does not provide for review of the recommendations or process of a particular factfinding panel in a particular dispute. Rather, it is a process that can be invoked at any time—without connection to a dispute—to consider "the effectiveness of the procedures and the other provisions of [§ 1004] and the provisions of section 1003" and to "make recommendations to the Congress for changes in this title as it finds appropriate." 39 U.S.C.

any material respect from the "final" pay package considered in the factfinding proceeding, and it suffers from all of the same defects of that proposal described above. Compl. ¶ 1.

### B. The Postal Service failed to consult with NAPS regarding compensation and benefits for "Headquarters" and "Area" EAS employees and for postmasters.

Among NAPS's 27,000 members are over 7,500 employees located throughout the country whom the Postal Service categorizes as "Headquarters" or "Area" EAS employees, as opposed to "Field" EAS employees. Compl. ¶ 57. "Headquarters" and "Area" employees include those who perform supervisory and managerial responsibilities in connection with a range of functions, such as vehicle maintenance, financial, sales, and marketing. Compl. ¶ 57.

During the 2017–2018 pay talks, the Postal Service treated Field EAS employees differently than Headquarters and Area EAS employees by proposing a pay package that applied *only* to Field employees. Compl. ¶¶ 56, 60. Without providing any explanation, the Postal Service did not allow NAPS to consult or participate with respect to pay and benefit talks for Headquarters and Area EAS employees. Compl. ¶¶ 59, 63. The Postal Service nevertheless acknowledged NAPS's representation of some Headquarters and Area employees. *See* Compl. ¶ 62; *see also* Def.'s Mem. 17 (stating that "the Postal Service acknowledges that some 'area' and 'headquarters' EAS employees qualify as supervisors who fall within the scope of NAPS's representation").

In addition to Field, Headquarters, and Area EAS employees, NAPS's membership includes over 4,100 of the nation's approximately 13,600 postmasters (who are a subcategory of Field EAS employees and are supervisors and managers). Compl. ¶ 75. Other than UPMA,

---

§ 1004(g). Invoking § 1004(g) would have done nothing to correct the Postal Service's disregard of the statutory limits on its discretion in this case.

NAPS represents more postmasters than any other organization. Compl. ¶ 76. The Postal Service

has refused to recognize NAPS's right to represent postmasters. Compl. ¶ 79.

## III.     ARGUMENT

**A.     NAPS has a private right of action for non-statutory review of the Postal Service's violations of the PRA's requirements regarding compensation and the scope of NAPS's representation.**

In 1979, the D.C. Circuit recognized a non-statutory cause of action allowing NAPS to

challenge the Postal Service's EAS pay policies and schedules. *NAPS v. USPS*, 602 F.2d at 432.

In 1980, Congress confirmed that non-statutory review would remain available. S. Rep. No. 96-

856, at 4 (1980). Nothing has changed in the intervening three decades to disturb this precedent.

The Court "begin[s] with the strong presumption that Congress intends judicial review of

administrative action." *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 670 (1986).

"Nonreviewability is not to be casually inferred," *NAPS v. USPS*, 602 F.2d at 430, for the Court

"ordinarily presume[s] that Congress intends the executive to obey its statutory commands and,

accordingly, that it expects the courts to grant relief when an executive agency violates such a

command," *Bowen*, 476 U.S. at 681. The party opposing judicial review bears the burden to

show by "'clear and convincing evidence' . . . a contrary legislative intent." *Traynor v. Turnage*,

485 U.S. 535, 542 (1988) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 141 (1967)). That

evidence must be "specific" and "reliable" as to Congress's intent. *Id.* at 542 (quoting *Bowen*,

476 U.S. at 673). For example, "[t]he mere fact that some acts are made reviewable should not

suffice to support an implication of exclusion as to others. The right to review is too important to

be excluded on such slender and indeterminate evidence of legislative intent." *Bowen*, 476 U.S.

at 674 (alteration in original) (quoting *Abbott Labs.*, 387 U.S. at 141). In determining whether

"the Postal Act's statutory scheme and the history of its evolution compel judicial restraint . . . ,

courts must be careful not to transform a congressional intent to restrict the scope of judicial review into a finding that no review is appropriate at all." *NAPS v. USPS*, 602 F.2d at 430.

  1.  **The D.C. Circuit held 40 years ago that NAPS's claim are reviewable.**

  In this case, the Court does not write on a blank slate. In 1979, the D.C. Circuit held that NAPS may obtain non-statutory review of the Postal Service's EAS pay policies and schedules. *NAPS v. USPS*, 602 F.2d at 432. "Courts can defer to the exercise of administrative discretion on internal management matters," the court acknowledged, "but they cannot abdicate their responsibility to insure compliance with congressional directives setting the limits on that discretion." *Id.* There is no relevant distinction between the claims in the 1979 *NAPS v. USPS* case and those here. In 1979, NAPS brought a challenge under 39 U.S.C. § 1004(a) to the Postal Service's reduction in the differential rate between supervisors and craft employees and a challenge under § 1004(b) to the Postal Service's refusal to consult "genuinely, meaningfully, and in good faith." *NAPS v. USPS*, 602 F.2d at 433. Here, NAPS challenges policies that result in a payment differential (or lack thereof) that violates § 1004(a) and total compensation that violates §§ 101(c) and 1003(a). It also brings challenges under § 1004(b) to the Postal Service's refusal to consult with NAPS regarding certain of NAPS's members and to give meaningful consideration to NAPS's feedback and the PRA's requirements. The Postal Service suggests no reason the Court should treat claims to vindicate rights under §§ 101(c) and 1003(a) differently than claims under § 1004(a)–(b), which *NAPS v. USPS* allowed.

  The Postal Service relegates *NAPS v. USPS*, controlling precedent precisely on point, to a footnote, contending that the D.C. Circuit addressed the Court's jurisdiction, "but did not address the question of a private right of action." Def.'s Mem. 8 n.3. To the contrary, after determining that the district court had jurisdiction over NAPS's suit, the circuit court explicitly addressed

itself to the private right of action. *NAPS v. USPS*, 602 F.2d at 429 ("The existence of a jurisdiction-conferring statute does not alone create a right of action for judicial review of agency action."). After reviewing the statutory scheme and the legislative history, the court concluded that "nonstatutory review" could proceed. *Id.* at 432 ("The history of the Postal Act indicates that Congress contemplated a very restricted judicial role in the Postal Service's compensation decisions. It does not present the kind of evidence necessary to foreclose review altogether."). *NAPS v. USPS* remains good law and confirms that NAPS has a private right of action to challenge the 2016–2019 Pay Package.

## 2. The 1980 amendments to the PRA did not strip NAPS of its right of action.

The Postal Service has not carried its burden to show that Congress revoked this right to judicial review when it amended the PRA in 1980. To the contrary, Congress confirmed its understanding of the Court's 1979 decision and acquiesced in it. Where Congress is plainly aware of a court's statutory holding and declines to override it, courts infer its intent to allow the decision to stand. *Johnson v. Transp. Agency, Santa Clara Cty.*, 480 U.S. 616, 629 n.7 (1987). This is so when a court determines judicial review is *not* available and Congress declines to act. *Bowen*, 476 U.S. at 673 n.4. When a court finds a cause of action and Congress then passes a law on the subject that does not say otherwise, the presumption is even stronger that it intends judicial review to remain available.

As the Postal Service notes, with the 1980 amendments to the PRA, Congress "set out to write legislation that would 'make it more likely that the parties can resolve their differences through improved consultation, rather than through the courts.'" Def.'s Mem. 12 (quoting Sen. Rep. No. 96-856, at 3–4). "More likely" is not "mandatory." The Postal Service errs when it concludes, from a statement of intent to lessen the volume of litigation, that Congress intended to

11

eliminate it altogether. Congress knew well that the D.C. Circuit had allowed NAPS's suit to enforce supervisors' rights under § 1004 to proceed: the Senate Report quotes the holding in *NAPS v. USPS* directly before concluding that Congress should take steps to make it "more likely" that supervisors and the Postal Service would resolve their disputes without resort to litigation. Sen. Rep. No. 96-856, at 4. A co-sponsor of the bill in the House of Representatives, considering the Senate amendments to the bill that eventually became law, explicitly acknowledged that the legislation left open the doors to the courthouse:

> Although I certainly hope that this legislation will alleviate the need to resort to judicial enforcement, this legislation provides a mechanism for arriving at a reasoned decision based on the statutory requirements at a given point in time. The legislation reaffirms the congressional intent that, if necessary, the courts can and should insure that the statutory requirements are being met including the requirement of adequate and reasonable differentials.

126 Cong. Rec. 20,741 (1980) (statement of Rep. Clay). Congress thus acknowledged the circuit court's recognition of a cause of action and affirmed its intent that the cause of action remain available.

Congress's decision to reject arbitration between supervisors and the Postal Service does not, as the Postal Service argues, contradict this plain-language reading of the legislative record. *See* Def.'s Mem. 13. There is no support for the Postal Service's presumption that litigation is "far more adversarial" than the binding arbitration process rejected by the Senate. Def.'s Mem. 13. The rejected provisions from the House of Representatives' bill entitled a supervisors' organization to a "full and fair hearing, including an opportunity for each party to present evidence in support of its claims and an opportunity to present its case in person, by counsel, or by other representative as such party may elect." H.R. 827, 96th Cong. (1979). The House bill placed no restrictions on the arguments the parties could make, the evidence they could present, or the discretion of the arbitration board, whose decisions were to be "conclusive and binding."

*Id.* The judicial review permitted by *NAPS v. USPS* and accepted by Congress is more limited. *See infra* Part III.B.

Since the 1980 amendments to the PRA, this Court has recognized that NAPS retains a cause of action to challenge the Postal Service's failure to comply with congressional requirements for its supervisory pay packages. *NAPS v. USPS*, the Court has held, established that "a party may seek limited judicial review of actions by the USPS to ensure that it has not abused [its] discretion" in developing supervisors' pay policies and schedules. *NAPS v. Runyon*, 821 F. Supp. 775, 777 (D.D.C. 1993) (emphasis omitted).[4] In addition to ignoring the controlling authority in this circuit, the Postal Service has not cited a single case holding otherwise. Instead, it relies on cases (all but one out-of-circuit) brought by private individuals, none of which involved the issues in dispute here and none of which considered the availability of non-statutory review. *See* Def.'s Mem. 8–9.[5]

Finally, the presumption in favor of judicial review is particularly strong where it is the only remedy available to the plaintiff if the agency refuses to follow its statutory duties. *See Bd.*

---

[4] The Postal Service argues, again wrongly, that *NAPS v. Runyon* did not "discuss[] the existence of a private right of action." Def.'s Mem. 8 n.3. The Court in *Runyon* "consider[ed] whether the Plaintiff's cause of action states a claim for which judicial review is available and for which relief can be granted." 821 F. Supp. at 777.

[5] *See Glenn v. U.S. Postal Serv.*, 939 F.2d 1516, 1520 (11th Cir. 1991) (no cause of action under 39 U.S.C. § 1006 for letter carriers protesting payment of entry-level wages after transferring from urban to rural route); *Stupy v. U.S. Postal Serv.*, 951 F.2d 1079, 1081–82 (9th Cir. 1991) (same); *Kaiser v. U.S. Postal Serv.*, 908 F.2d 47, 50–51 (6th Cir. 1990) (same); *McGarigle v. U.S. Postal Serv.*, 904 F.2d 687, 692 (Fed. Cir. 1990) (declining to address whether § 1006 confers a private right of action); *Blaze v. Payne*, 819 F.2d 128, 129–30 (5th Cir. 1987) (no cause of action is available to employee bringing claims for "alleged torts and for various unpleasant working conditions" under § 1001(b)); *Gaj v. U.S. Postal Serv.*, 800 F.2d 64, 68–69 (3d Cir. 1986) (former employee has no cause of action under § 1001(b) for the Postal Service's alleged failure to appropriately apply the merit selection system); *Williams v. U.S. Postal Serv.*, No. 17-cv-782-bbc, 2018 WL 2899711, at *3 (W.D. Wis. June 11, 2018) (no cause of action allowing an individual to sue the Postal Service under 39 U.S.C. § 101(a) for losing his mail); *Morris v. Runyon*, 870 F. Supp. 362, 371 (D.D.C. 1994) (no cause of action to challenge Postal Service's decision to issue a limited run of certain stamps).

*of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991) ("First, central to our decision [establishing non-statutory review] was the fact that the Board's interpretation of the Act would wholly deprive the union of a meaningful and adequate means of vindicating its statutory rights."); *NAPS v. Runyon*, 821 F. Supp. at 778 ("As counsel for the Plaintiff noted at the oral argument in this case, the Plaintiff has absolutely no method *other* than a civil suit like the instant one to ensure that the Defendants do not exceed the bounds of their discretion in this matter."). The administrative remedy available through the PRA is non-binding. Indeed, the Postal Service rejected nearly all of the factfinding panel's recommendations, despite the panel's agreement that the 2016–2019 Pay Package violated the PRA. Without judicial review, NAPS would have no way to bring the Postal Service into compliance. Moreover, there is no administrative process by which NAPS can challenge the Postal Service's refusal to recognize NAPS's lawful representation of certain employees. Without judicial review, the Postal Service would have free reign to refuse to recognize NAPS's representation of *any* employees and to refuse to consult with it at all. That would eviscerate the PRA.

For the forgoing reasons, non-statutory review is available in this case.[6]

**B.    NAPS's claims fall within the scope of non-statutory review.**

Under non-statutory review, the Court "determine[s] whether the agency has acted 'ultra vires'—that is, whether it has 'exceeded its statutory authority.'" *Mittleman v. Postal Regulatory*

---

[6] Inasmuch as the Postal service suggests that NAPS was required to use the term "non-statutory review" in its Complaint, *see* Def.'s Mem. 15, it is mistaken. A request for non-statutory review asks the court to determine whether an agency has acted beyond the boundaries established by statute. "Such claims usually take the form of a suit seeking an injunction, often accompanied by a request for relief under the Declaratory Judgment Act." *R.I. Dep't of Envtl. Mgmt. v. United States*, 304 F.3d 31, 42 (1st Cir. 2002). That is the approach of NAPS's Complaint. NAPS cited each statutory requirement it contends the Postal Service has ignored. This was sufficient to alert the Postal Service as to the nature of its claims.

*Comm'n*, 757 F.3d 300, 307 (D.C. Cir. 2014) (quoting *Aid Ass'n for Lutherans v. U.S. Postal Serv.*, 321 F.3d 1166, 1173 (D.C. Cir. 2003)). The Court has at times referred to the standard as an inquiry into whether the agency has engaged in "reasoned decision-making." *Reese Bros. v. U.S. Postal Serv.*, 905 F. Supp. 2d 223, 254–55 (D.D.C. 2012) (quoting *Greater Boston Television Corp. v. FCC*, 444 F.2d 841, 852 (D.C. Cir. 1970)); *accord S. Cal. Edison v. U.S. Postal Serv.*, 134 F. Supp. 3d 311, 321 (D.D.C. 2015).

An agency exceeds its statutory authority—and thus is subject to non-statutory review—when it "violate[s] statutory directives." *Cobell v. Babbitt*, 52 F. Supp. 2d 11, 30 (D.D.C. 1999) (Lamberth, J.) (citing *NAPS v. USPS*, 602 F.2d at 432); *see Aid Ass'n for Lutherans*, 321 F.3d at 1173 (noting that "judicial review [is] proper" even when the statute precludes judicial review "where the [agency] acted in excess of its delegated powers and contrary to a specific prohibition in the [statute]" (citation omitted)). It exceeds its statutory authority when it "defies the plain language of a statute" or its "construction is utterly unreasonable and thus impermissible." *Aid Ass'n for Lutherans*, 321 F.3d at 1174. An agency also engages in *ultra vires* action when, among other things, it

- relies on flawed factual assumptions, *see Reese Bros.*, 905 F. Supp. 2d at 258 & n.41; *see also S. Cal. Edison*, 134 F. Supp. 3d at 322–23, 326 (Postal Service acted *ultra vires* when it failed to rebut or consider factual evidence);

- "fail[s] to articulate a comprehensible principle governing" how it makes decisions, *S. Cal. Edison*, 134 F. Supp. 3d at 326 (quoting *Siegel v. S.E.C.*, 592 F.3d 147, 162 (D.C. Cir. 2010));

- fails to "adequately explain[] . . . its decision," *id.* (quoting *Fox v. Clinton*, 684 F.3d 67, 75 (D.C. Cir. 2012)); or

- uses *post hoc* rationalizations, *Sears, Roebuck & Co. v. U.S. Postal Serv.*, 844 F.3d 260, 265 (D.C. Cir. 2016).

The Postal Service contends, incorrectly, that it must only "*consider* factors mandated in the statute" and that the Court has no power to require it to implement any substantive statutory requirements. Def.'s Mem. 14 n.4 (emphasis added). While the Postal Service has broad substantive discretion with regard to supervisory pay, it cannot act in a way that demonstrates an "utterly unreasonable" construction of the PRA. *Aid Ass'n for Lutherans*, 321 F.3d at 1174.

The Postal Service's failure to implement a supervisory differential is *ultra vires* action. "The Postal Act does require *[s]ome* [supervisory] differential, and requires that that differential be adequate and reasonable." *NAPS v. USPS*, 602 F.2d at 435 (emphasis added). The Court "cannot substitute its own judgment of what is adequate and reasonable for that of the Postal Service," but it has the power to ensure that the Postal Service "arrives at a good faith judgment regarding a differential that is adequate and reasonable *in light of [the] factors*" set forth in the PRA (not merely in the Postal Service's own, unconstrained judgment) and that "the Postal Service . . . consider[s] and *fulfill[s]* the differential requirement." *Id.* (emphasis added). The circuit court has also emphasized to the Postal Service that conclusory recitations that it has considered the statutory factors will not do. *Id.* at 440. It requires the Postal Service

> to set out the factors it considered . . . , to explain the relationship between those factors and the statutory requirements, to describe what those factors indicated . . . , to reveal why (and how) it resolved the tensions, if any, among the various factors as it did, and to relate why the salary differentials resulting from these calculations are adequate and reasonable in light of the factors.

*Id.* at 441.

NAPS alleges that the Postal Service violated the statutory mandate to have "[s]ome differential," *id.* at 435, because under the 2016–2019 Pay Package, "thousands of EAS

employees earn[] less than the craft workers they supervise." Compl. ¶ 37. For example, "in FY2019, over 4,100 Supervisors of Customer Service . . . received an SDA minimum salary of $63,774 . . . that is over $600 less than the $64,413 base salary for the City Carriers they supervise." *Id.* ¶ 39. As a result of the Postal Service's too-low SDA and its overtime policies that pay overtime to craft employees at a higher and faster rate than supervisors earn, "many craft employees (even those whose base salary is less than their supervisors') earn more than their supervisors who work the same hours." Compl. ¶ 40. Even if the Court defers to the Postal Service's conclusion that a 5% supervisory differential is adequate and reasonable, in practice the Postal Service has not implemented that differential, and it has never determined that an SDA lower than 5% fulfills the statutory requirements. The Postal Service's failure to "fulfill[] the differential requirement" is actionable in this Court. *NAPS v. USPS*, 602 F.2d at 435.

While the PRA's mandate of compensation comparable to the private sector was not at issue in *NAPS v. USPS*, the same reasoning applies: the Postal Service must "consider and fulfill" this requirement, *id.*; *see also id.* at 440 (listing "the compensation paid for comparable work in private sectors of the economy" as one factor the Postal Service must consider), and it cannot maintain a construction of comparability that is "utterly unreasonable," *Aid Ass'n for Lutherans*, 321 F.3d at 1174. NAPS alleges that the Postal Service has disregarded this factor or deprived it of all reasonable meaning. In some places, for example, "the Postal Service's compensation is more than 20% below what private companies pay for comparable jobs." Compl. ¶ 24. Indeed, the Postal Service could not consider or fulfill the comparability mandate because it did not undertake, commission, or review any studies to evaluate private sector pay before issuing the 2016–2019 Pay Package. Compl. ¶¶ 23, 83. The *post hoc* study it presented to the factfinding panel addressed only eight of the approximately 1,000 EAS positions (several of

which the Postal Service's own expert found to be paid less than their private sector counterparts), leaving the Postal Service's obligations to the rest of its EAS employees unaddressed. Compl. ¶ 23. The Postal Service has also refused to honor the factfinding panel's recommendation that the Service engage a compensation expert to advise it on bringing the 2016–2019 Pay Package up to market standards. Compl. ¶ 74.

The Postal Service disdains NAPS and the factfinding panel's insistence that it study market compensation for comparable work when preparing its Pay Proposal, Def.'s Mem. 4, but it suggests no other way it could follow the statutory mandate of pay comparability. The Court has the power to compel the Postal Service to take the necessary steps to follow Congress's directives. *Cobell*, 52 F. Supp. 2d at 28 ("Forcing the government to take basic measures to reach their legal duty of giving plaintiffs an accounting can hardly be said to be inconsistent with Congress's demand that an accounting be given.").

"[A]n agency's 'fail[ure] to consider contradictory record evidence where such evidence is precisely on point' . . . constitutes a 'lapse of reasonable and fair decisionmaking.'" *S. Cal. Edison*, 134 F. Supp. 3d at 326 (quoting *Morall v. Drug Enf't Admin.*, 412 F.3d 165, 167 (D.C. Cir. 2005)). NAPS has pled that the Postal Service knowingly pays thousands of supervisors less than the employees they supervise and thousands of supervisors substantially below market compensation, and that it has refused to take any corrective action. These facts raise the reasonable inference that the Postal Service has failed to "consider[] . . . and arrive[] at a good faith judgment" that the 2016–2019 Pay Package meets the PRA's differential and comparability requirements. *NAPS v. USPS*, 602 F.2d at 435. As a result, the EAS compensation system that the Postal Service seeks to implement will not "assure the attraction and retention of qualified and capable supervisory and other managerial personnel," nor does it "reflect[] the essential

importance of a well-trained and well-motivated force," as required by the statute. 39 U.S.C.
§ 1004(a); *see* Compl. ¶ 26 (recounting the factfinding panel's conclusion that the Postal
Service's compensation system "does not satisfy the statutory criteria of comparability and the
maintenance of a well-motivated workforce"); Compl. ¶¶ 42–51, 67(c), 94–99.

The Postal Service further violated its statutory obligations by failing to explain its
reasons for rejecting NAPS's proposed changes to the 2016–2019 Pay Package, Compl. ¶¶ 53–
54, from which the Court can infer that the Postal Service did not seriously consider those
changes at all. *See* 39 U.S.C. § 1004(d)(2)(C) (requiring the Postal Service to give
recommendations from NAPS "full and fair consideration," including providing its reasons "if
any of such recommendations are rejected").

Because these facts, as plausibly alleged in the Complaint, raise the reasonable inference
that the Postal Service acted *ultra vires*, the Motion to Dismiss Counts I–III should be denied.

## C. The PRA entitles NAPS to represent all supervisory and managerial employees, including those who work at "headquarters" or "area" locations and including postmasters.

The Postal Service's argument to dismiss Counts IV and V—which seek to require the
Postal Service to recognize NAPS's representation of (a) EAS employees whom the Postal
Service categorizes as "Headquarters" or "Area" EAS employees and (b) postmasters—rests on a
misreading of the PRA. Under the PRA, once NAPS qualifies as "a supervisory organization
[that] represents a majority of supervisors," it is entitled to consult on pay and "other programs
relating to supervisory and other managerial employees," not only those relating to supervisors
alone. 39 U.S.C. § 1004(b). In addition to ignoring the plain text of the statute, the Postal Service
seeks determinations on questions of mixed fact and law that are inappropriate at this stage of the
proceedings.

### 1. The Postal Service's interpretation of § 1004(b) cannot be squared with the plain language of the statute.

The Postal Service seeks to dismiss Counts IV and V on the basis that NAPS can represent only supervisors.[7] Def.'s Mem. 15. That argument runs directly contrary to the text of the PRA. The plain language of 39 U.S.C. § 1004(b) supports NAPS's right to represent *all* supervisory and managerial personnel, including managers and postmasters, and including those who work at "headquarters" or "area" locations, so long as NAPS has satisfied the procedural requirements of § 1004.[8]

Section 1004(b) describes three kinds of organizations that are eligible to participate in consultation on pay and benefit programs "relating to supervisory and other managerial employees": (1) a supervisory organization that represents a majority of supervisors; (2) an organization other than one representing supervisors that represents at least 20% of postmasters; or (3) a managerial organization (other than an organization representing supervisors or postmasters) that represents a substantial percentage of managerial employees. 39 U.S.C.

---

[7] In response to NAPS's allegation that the Postal Service failed to consult with NAPS regarding compensation and benefits for Headquarters and Area EAS employees in violation of § 1004(b), Compl. ¶¶ 55–63, 100–106, the Postal Service *concedes* that "some 'area' and 'headquarters' EAS employees would qualify as supervisors subject to NAPS representation." Def.'s Mem. 16 n.6; *see also id.* at 17 (admitting that "some '"headquarters' and 'area' EAS employees qualify as supervisors who fall within the scope of NAPS's representations"). Defendant's recognition that NAPS represents at least some Headquarters and Area EAS employees, in conjunction with the allegations that the Postal Service failed to consult with NAPS regarding compensation and benefits for those employees, *see* Compl. ¶¶ 55–63, is impossible to square with the Postal Service's request to dismiss Count IV outright.

[8] To the extent the Postal Service contends that NAPS can represent only "Field" EAS employees and not "Headquarters" and "Area" EAS employees, that position is unsupported. The classification of EAS employees as "Field," "Headquarters," and "Area" has no basis in the PRA.

§ 1004(b).[9] Neither the Postal Service nor UPMA disputes that NAPS qualifies under the first of the three pathways—it is a supervisory organization that represents a majority of supervisors.

Once the Postal Service recognizes an organization under one of any of the three pathways, that organization is entitled to consult on policies and programs relating to any or all of its members. *See id.* § 1004(d)(1) (stating that the Postal Service shall consult with a supervisors' organization on programs that affect its members). The Postal Service asserts, without support, that only supervisors can join supervisors' organizations, only managers can join managerial organizations, and only postmasters can join postmasters' organizations. Def.'s Mem. 18. The PRA does not define these terms or suggest such a rigid separation. The plain language of the statute shows that Congress anticipated that a supervisory organization may represent any kind of supervisory or managerial employee.

The statute refers to organizations like NAPS as "recognized organizations of supervisory *and* other managerial personnel." 39 U.S.C § 1004(b) (emphasis added). It provides that each recognized organization "*shall* be entitled to participate directly in the planning and development of pay policies and schedules, fringe benefit programs, and other programs relating to supervisory *and* other managerial employees." *Id.* § 1004(b) (emphasis added). The PRA does

---

[9] 39 U.S.C. § 1004(b) provides in full:

> The Postal Service shall provide a program for consultation with recognized organizations of supervisory and other managerial personnel who are not subject to collective-bargaining agreements under chapter 12 of this title. Upon presentation of evidence satisfactory to the Postal Service that a supervisory organization represents a majority of supervisors, that an organization (other than an organization representing supervisors) represents at least 20 percent of postmasters, or that a managerial organization (other than an organization representing supervisors or postmasters) represents a substantial percentage of managerial employees, such organization or organizations shall be entitled to participate directly in the planning and development of pay policies and schedules, fringe benefit programs, and other programs relating to supervisory and other managerial employees.

not say that recognized organizations may participate in programs "relating to supervisory *or* managerial employees," as would be expected if each recognized organization represented only one of these categories. Nor does the statute say that "a supervisory organization . . . shall be entitled to participate directly in the planning and development of pay policies and schedules . . . relating *only* to supervisory employees," as the Postal Service would read it. *See* Def.'s Mem. 16. The "conjunctive 'and'" at the end of § 1004(b) indicates that organizations may represent both supervisory employees and managerial employees. *See Loving v. I.R.S.*, 742 F.3d 1013, 1019 (D.C. Cir. 2014) (finding that statute's use of "conjunctive 'and'" provided "strong indication that Congress did not intend the requirements as alternatives").

The Postal Service seeks to reads text into the statute that Congress omitted. Section 1004(b) places no limits on whom supervisory organizations can represent or whether non-supervisors can join and be represented by supervisory organizations. The Postal Service relies on the language from § 1004(b) that describes a postmasters' organization as "an organization (other than an organization representing supervisors)" and a managerial organization as "[an] organization (other than an organization representing supervisors or postmasters)." *See* Def.'s Mem. 17–18 (quoting 39 U.S.C. § 1004(b)).[10] No language in the statute limits the membership of a supervisory organization. While the statute requires that a postmasters' organization represent at least 20 percent of postmasters, it does not bar the other 80 percent from choosing to join and be represented by NAPS. Postmasters and other managerial employees have a choice: they can throw in their lot with the general supervisory organization, which represents the

---

[10] In its motion to dismiss, UPMA repeats the Postal Service's argument that § 1004(b) prohibits NAPS from representing postmasters in pay consultations. UPMA Mem. Supp. Mot. Intervene 2, ECF No. 14-1. But, like the Postal Service, UPMA does not point to specific language in the statute prohibiting NAPS from representing postmasters, or grapple with the conjunctive phrasing of "supervisory and other managerial employees."

interests of all supervisory and managerial employees (including postmasters).[11] Or, if they prefer, they can form and/or join their own, interest-specific negotiating bodies.

While the Court need not look beyond the text, the Postal Service's interpretation of the statute also conflicts with the most on-point precedent. In *NAPS v. Runyon*, the court recognized the National Association of Postmasters of the United States ("NAPUS")[12] as a supervisory or managerial organization under the 1993 version of the PRA. *See* 821 F. Supp. at 777. Long before the statute was amended in 2003 to add reference to postmasters, that court found that § 1004(b) granted NAPUS consultation rights. Thus, postmasters are a subset of supervisory and managerial personnel. The fact that today there is a separate postmasters' organization that represents some, but not all, postmasters does not change the outcome.

The Postal Service's own practices contradict its argument. No standalone manager-specific organization exists. Thus, under the Postal Service's overly rigid interpretation of § 1004(b), managers would not be entitled to any representation in the pay consultation process under § 1004. Yet, the Postal Service has long recognized NAPS's representation of postal managers—including in the 2016–2019 pay talks that are the subject of this suit—and the text and spirit of the PRA indicate that Congress believed that all Postal Service employees should have some type of representation.

The Postal Service's constrained interpretation of § 1004 disregards not only the text and its own practice, but its employees' choice. NAPS's membership includes over 7,500 employees

---

[11] NAPS's reading of the statute is also the only interpretation that preserves consultation rights for postmasters. Were the Court to accept a rigid distinction between supervisors, postmasters, and managers and require each to form their own, exclusive organization, the PRA would give postmasters the right to form their own organization but no right to consult—an absurd result. When postmasters are recognized as a subcategory of "supervisory and managerial employees," the statute makes sense.

[12] NAPUS later merged with the National League of Postmasters to form UPMA.

located throughout the country whom the Postal Service categorizes as Headquarters or Area employees, as well as over 4,100 postmasters. Compl. ¶¶ 57–58, 75.

The Postal Service's interpretation would require the Court to write significant new language into the statute stating that supervisors' organizations may consult only on programs relating to supervisors, postmasters' organizations may consult only on programs relating to postmasters, and managerial organizations may consult only on programs relating to managers. But the job of the Court is "neither to add nor to subtract, neither to delete nor to distort" the words of a statute. *62 Cases, More or Less, Each Containing Six Jars of Jam v. United States*, 340 U.S. 593, 596 (1951). As there is no dispute that NAPS is a supervisors' organization representing a majority of supervisors, under § 1004(b) it is "entitled to" consult on policies and programs relating to any supervisory and managerial employees that it represents, including postmasters and Headquarters and Area employees. The Postal Service's request to dismiss Counts IV and V should therefore be denied.

### 2.    The Postal Service's reliance on legislative history cannot alter the plain text of the statute and, in any event, is unconvincing.

The Postal Service's selective citations to the legislative record cannot, and do not, alter the plain language of § 1004(b). To the extent legislative history conflicts with the text of the statute, the statutory text controls. *See Milner v. Dep't of Navy*, 562 U.S. 562, 574 (2011) ("Legislative history, for those who take it into account, is meant to clear up ambiguity, not create it."); *Stromberg Metal Works, Inc. v. Press Mech., Inc.*, 77 F.3d 928, 931 (7th Cir. 1996) (Easterbrook, J.) ("When text and legislative history disagree, the text controls.").

In any case, the legislative history offers support for NAPS's position. The 1980 Senate Report uses broad and inclusive language when describing the employees who are covered by the PRA, including "supervisory and administrative employees" and "employees who are truly a

part of management of the government." S. Rep. No. 96-856, at *3; *see also id.* (noting that while "[t]he Committee does not recommend collective bargaining for supervisory personnel, postmasters or administrative employees in the headquarters or regional offices of the postal service," the statute provided these employees with the right to "participation"). The inclusion of "administrative employees" in this explanation directly undermines the Postal Service's assertion that clerical and administrative EAS employees, even if ineligible for representation through a collective bargaining unit, are outside the statute's coverage. Def.'s Mem. 17.

The 2003 Senate Report also contains language rejecting the Postal Service's attempted delineation between supervisors and postmasters. Instead, it specifically identifies postmasters as having supervisory responsibilities. S. Rep. No. 108-112, at 3 (2003) ("Both postmasters and supervisors are front line managers *who supervise* postal employees . . . ." (emphasis added)). Even under the Postal Service's theory that NAPS represents only supervisors, NAPS may therefore represent postmasters.

The Postal Service's focus on the 1978 Memorandum of Understanding ("MOU") is irrelevant. *See* Def.'s Mem. 18. By its own terms, the MOU expired in 1981, almost 40 years ago, and it does not reflect NAPS's current membership. *See* S. Rep. No. 96-856 at *6.

### 3.       The Court should decline the Postal Service's request for findings of mixed fact and law.

Even if the Court holds that NAPS can represent and consult with regard to only supervisors, and not postmasters or managers, dismissal of Counts IV and V is still inappropriate because the Court would have to resolve questions of mixed fact and law to determine who is a supervisor, who is a postmaster, and who is a manager. *See B.R. ex rel. Rempson v. District of Columbia*, 524 F. Supp. 2d 35, 39 (D.D.C. 2007) (explaining that courts must "treat the complaint's factual allegations—including mixed questions of law and fact—as true and draw all

reasonable inferences therefrom in the plaintiff's favor"); *S.E.C. v. RPM Int'l, Inc.*, 282 F. Supp. 3d 1, 23–25 (D.D.C. 2017) (recognizing that "courts have cautioned against granting a motion to dismiss" based on mixed questions of law and fact such as the materiality of a misrepresentation, and finding that resolution of that issue would be more appropriate "on summary judgment after the record has been more fully developed").

The Postal Service has not offered any definition of a "supervisory" or a "managerial" employee, and no facts in the Complaint or record establish which positions the Postal Service presently views as supervisory or managerial. The Court therefore cannot determine whether the Postal Service has correctly described various Headquarters and Area employees—the EAS "professional, technical, administrative and clerical employees," Def.'s Mem. 17—as managers, not supervisors. Nor can the court determine whether, as NAPS has alleged, all EAS employees at "headquarters" and "area" locations are properly categorized as "supervisory and other managerial personnel who are not subject to collective bargaining agreements." Compl. ¶ 102. Nor can the Court determine whether postmasters are a subcategory of "supervisory employee" without more information. The Court should not credit the Postal Service's self-serving and unsupported view of "the scope of NAPS's representation," Def.'s Mem. 16, especially as all inferences must be drawn in NAPS's favor at this early stage.

Whether an employee is a supervisory employee, a postmaster, a managerial employee, or some combination of those terms, will depend not only on the definitions of those terms and the employee's job title but also on other factual issues, such as the employee's job responsibilities. While the Postal Service asserts, in a sweeping and conclusory manner, that all "professional, technical, administrative and clerical employees" necessarily fall outside the scope of NAPS's representation, *id.* at 17, it fails to explain why an administrative employee cannot

also be a supervisor. Because factual determinations are "inappropriate for resolution on a motion to dismiss," *Long v. United States*, 604 F. Supp. 2d 119, 123 (D.D.C. 2009), the Court should deny the Postal Service's Motion with respect to Counts IV and V.

### 4.     The National Labor Relations Act does not apply to this case.

As a last measure, the Postal Service contends that, "[e]ven if this Court were to find that the PRA does not forbid NAPS from representing non-supervisors," the National Labor Relations Act would forbid NAPS from such representation. Def.'s Mem. 19. This argument is foreclosed by statute. NAPS and other recognized organizations under § 1004(b) are not collective bargaining organizations governed by the NLRA—that is the entire point of § 1004(b). Nor, as the Postal Service asserts, are such organizations "bargaining units" within the meaning of 39 U.S.C. § 1202(1). *See* Def.'s Mem. 20 n.8.

The NLRA applies to the Postal Service, but only "to the extent *not inconsistent with [title 39]*." 39 U.S.C. § 1209(a) (emphasis added). Thus, not only does the NLRA simply not apply to organizations recognized under § 1004(b), but even if it did, to the extent there was any conflict between the PRA and the NLRA, the PRA would control. Therefore, if the Court were to find that NAPS can consult on behalf its members under 39 U.S.C. § 1004(b), and that its members may include postmasters and all Headquarters and Area EAS employees, then the NLRA would not prohibit NAPS from consulting on behalf of those members. The Postal Service's argument that NAPS has not met requirements of the NLRA (*e.g.*, petitioning for an NLRB election) is therefore irrelevant and not grounds for dismissal.

## IV.     CONCLUSION

For the foregoing reasons, NAPS respectfully requests that the Court deny the Postal

Service's Motion to Dismiss in its entirety.

Respectfully submitted,

Andrew D. Freeman (admitted *pro hac vice*)
Jean M. Zachariasiewicz
Kobie A. Flowers (Bar No. 991403)
Brown, Goldstein & Levy, LLP
120 E. Baltimore Street, Suite 1700
Baltimore, Maryland 21202
Tel: (410) 962-1030
Fax: (410) 385-0869
adf@browngold.com
jmz@browngold.com
kaf@browngold.com

Dated:  November 20, 2019                              *Counsel for Plaintiff National Association of*
                                                                           *Postal Supervisors*