IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL ASSOCIATION OF POSTAL SUPERVISORS,<br>          Plaintiff,<br>v.<br><br>UNITED STATES POSTAL SERVICE,<br>          Defendant. | Case No. 1:19-cv-2236 (RCL) |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS**

**Introduction**

The Complaint of the National Association of Postal Supervisors ("NAPS") fails to state a claim for which relief may be granted. It alleges claims that amount merely to disagreements about Postal Service policies on pay, without citing any statutory authority granting it the right to bring such an action against the Postal Service.

In its opposition to the motion to dismiss, NAPS appears to concede that no statute gives it the right to seek legal review of those policy disagreements. It attempts to correct this defect by arguing it is entitled to non-statutory review of the Postal Service's actions. Non-statutory review is an extremely narrow cause of action that is comparable to mandamus review and only appropriate when an agency's actions are *ultra vires* and violate a clear, unambiguous and discrete statutory duty. Nothing in the Complaint alleges such a violation.  Rather, as discussed below, Plaintiffs essentially seek an order compelling the Postal Service to comply with broad statutory guidelines that are committed to agency discretion, for which relief is unavailable.  *See Norton v. South Utah Wilderness Alliance*, 542 U.S. 55, 61, 64 (2004).

Recognizing the weakness of its claim, NAPS's opposition memorandum makes new arguments that the Postal Service failed to act in good faith by failing to consider necessary

statutory factors and not considering the recommendations made by NAPS. These new claims are speculative and conclusory and do not show any *ultra vires* acts of the Postal Service.

NAPS also reiterates its arguments that the Postal Service violated the Postal Reorganization Act ("PRA") by failing to consult with it regarding the Postal Service's salary decisions for all Executive Administrative Schedule ("EAS") employees, including non-supervisors and postmasters. NAPS's reading of the PRA is incorrect, overly expansive, and would frustrate Congress's intent. Even if its interpretation were marginally plausible, the Postal Service's actions would certainly not be so clearly incorrect as to be *ultra vires*.

The Postal Service's argument is bolstered by the fact that the National Labor Relations Act ("NLRA") prohibits NAPS from representing line employees that are, or may be, represented for collective bargaining by a union after showing a majority of the line employees want such representation. In its opposition, NAPS argues that this should not matter, because the PRA preempts the NLRA when they conflict. That argument fails, however, as the two statutes may be read in harmony with one another – both prohibit NAPS from representing anyone other than supervisors. Moreover, NAPS's argument ignores the traditional statutory canons of construction, which explain that repeals by implication are disfavored. As such, the Court should accept the Postal Service's more plausible construction of the PRA, rather than NAPS's, which strains to create a conflict where none exists.

## Argument

### NAPS has failed to state a claim for relief under non-statutory review

In its opposition, NAPS appears to concede that it does not have a statutory cause of action against the Postal Service, but claims that it is entitled to relief under the doctrine of non-statutory review.  (Opp. at 9, 14)  Non-statutory review is a very limited form of review designed

to curtail agencies or officials whose actions are *ultra vires*. (ECF No. 11, Def. Mem. at 13-15) The allegations made by NAPS do not allege *ultra vires* actions, and, therefore, do not state a claim for non-statutory relief. Indeed, the counts of the Complaint that challenge the Postal Service's decisionmaking with respect to the challenged pay package focus on alleged failures to act by the Postal Service with respect to matters within the Postal Service's discretion under the PRA, not on affirmative conduct by the Postal Service allegedly outside the bounds of that statute. (*Id.* at 4-5)

Non-statutory review is very deferential and "is intended to be of extremely limited scope." *See Trudeau v. FTC*, 456 F.3d 178, 190 (D.C. Cir. 2006). In order to state a claim for non-statutory review, a plaintiff must identify a "'clear and mandatory' obligation in a specific statute or regulation." *See International Ass'n of Machinists & Aero. Workers v. Griffin*, 590 F. Supp. 2d 171, 177 (D.D.C. 2008) (quoting *Pennsylvania Mun. Auth. Ass'n v. Johnson*, 2005 U.S. App. LEXIS 10455 at *5 (D.C. Cir. Jun. 3, 2005) (per curiam)). In order to violate a "clear and mandatory" obligation, the statute or regulation must be subject to only one reasonable interpretation.[1] In order to prevail, Plaintiff must not only show that the Postal Service is wrong, but that the statute was clear and unambiguous at the time the Postal Service made its decision.

The D.C. Circuit applied non-statutory review to Postal Service salary decisions once before, in 1979. *National Ass'n of Postal Supervisors v. United States Postal Service*, 602 F.2d

---

[1] *See Nat'l Air Traffic Controllers Ass'n AFL-CIO v. Fed. Serv. Impasses Panel*, 437 F.3d 1256, 1264, (D.C. Cir. 2006) (cannot conclude an agency violated a "specific and unambiguous statutory directive" when both sides "have raised compelling arguments" about the statute's interpretation); *Griffin* 590 F. Supp. 2d at 178 ("The D.C. Circuit has repeatedly held that non-statutory review must be based on a statute or regulation that is subject to only one reasonable interpretation"); *Detroit International Bridge Co. v. Government of Can.*, 133 F. Supp. 3d 70, 106-07 (D.D.C. 2015) (holding that, because both parties have "reasonable but contrary" interpretations of the statute, it cannot be said to be "clear and mandatory").

420 (D.C. Cir 1979). Though this older case did not use the modern "clear and mandatory" language, its test was ultimately equivalent, applying the standard for mandamus review. *Id.* at 432 ("the scope of review in this case and the resulting judicial task mimic that appropriate in mandamus actions").[2] The Circuit reversed a district court decision holding that the Postal Service was not maintaining an adequate differential between employees and supervisors. *Id*. It explained that, while the Postal Service was obligated to comply with the differential requirement, this only means that it must consider it, along with other statutory factors, including its overall responsibility to provide "prompt, reliable, and efficient" postal services. *Id.* at 435. The court therefore held that, while a court could "compel the Postal Service to consider and fulfill the differential requirement" it could not "substitute its own judgement of what is adequate and reasonable for that of the Postal Service." *Id.* It further explained that, if NAPS believed the Postal Service's differential was unreasonable, its recourse was to go to the legislature. *Id.*

NAPS's opposition argues that the appropriate standard is the "reasoned decision-making" standard employed by the APA, a position predicated on district court cases from 2012 and 2015. (Opp. at 15) The first of those district court decisions, *Reese Brothers*, argued that non-statutory review allowed courts to review an agency's decision-making process, based on a 1970 case, and ignoring modern non-statutory review cases. *Reese Brothers v. United States Postal Service*, 905 F. Supp. 2d 223, 254 (D.D.C. 2012). Indeed, the court in *Reese Brothers*

---

[2] Another Postal Service case questioned whether *Chevron* was a more appropriate analogy than mandamus, but declined to decide the issue, noting that "[t]hese questions are abstractly interesting, but ultimately unimportant in the resolution of this matter." *Aid Ass'n for Lutherans v. United States Postal Service*, 355 U.S. App. D.C. 221, 229, 321 F.3d 1166, 1174 (2003). The court explained that either test would produce the same result in that case, as the question was whether "the regulation defies the plain language of a statute, or [whether] the agency's construction was utterly unreasonable." *Id.*

4

confusingly characterized this test as "far less intrusive than is required under the APA[,]" *id.,* despite the fact that the "reasoned decision-making" standard is the applicable standard under the APA. *See Sears, Roebuck & Co. v. United States Postal Service*, 844 F.3d 260, 265 (D.C. Cir. 2016) ("the 'reasoned decision-making' standard . . . is the paradigm of APA review").[3]

Plaintiff's position, however, fails to account for the D.C. Circuit's more recent articulation of the standard for *ultra vires* review and the Circuit's corresponding recognition that a "reasoned decision-making" standard cannot be "squared with the seemingly more limited scope of review outlined in . . . [*Mittleman* v. *Postal Regulatory Comm'n,* 757 F.3d 300 (D.C. Cir. 2014)]." *Sears, Roebuck & Co.,* 844 F.3d at 265.[4]  After discussing prior decisions, the *Sears* court confirmed that the standard is that stated in *Mittleman,* namely, whether the Postal Service has "'exceeded its statutory authority.'"  *Id.; see also Eagle Trust Fund v. U.S. Postal Serv.,* 365 F. Supp. 3d 57, 67 (D.D.C. 2019) (dismissing complaint against the Postal Service based on the failure to plausibly plead facts that could meet the *Mittleman* standard).

Thus, however the standard for non-statutory review may have been articulated in the past, the standard as currently understood by the D.C. Circuit compels this Court to focus solely on whether Plaintiff has plausibly alleged that the Postal Service has exceeded a clear, discrete and unambiguous statutory directive. *See Mittleman*, 757 F.3d at 307. Because the applicable standard for non-statutory review is limited to whether the Postal Service has acted *ultra vires*,

---

[3] The second case adopted *Reese Brothers'* holding without substantial new analysis. *S. Cal. Edison v. U.S. Postal Serv.,* 134 F. Supp. 3d 311, 320 (D.D.C. 2015).
[4] The Court in *Sears* ultimately permitted "reasoned decisionmaking review" in that case only because the Postal Service apparently had waived the defense that it was exempt from APA review at the trial level and conceded on appeal that the reasoned decisionmaking standard of the APA applied in that case.  *Sears,* 844 F.3d at 265-66 (observing that, otherwise, there would be "a question as to whether reasoned decision-making review can be squared with the seemingly more limited scope of review outlined in . . . *Mittleman*").

Plaintiff's arguments based on the inapplicable reasoned decision-making APA standard should be rejected.

### *The Postal Service's differential policy is not ultra vires*

NAPS alleges that the Postal Service violated 39 U.S.C. § 1004(a), which states that "It shall be the policy of the Postal Service to . . . provide adequate and reasonable differentials in rates of pay" between carriers and clerks and supervisors and managers. (Compl. ¶ 35) Plaintiff alleges that the Postal Service has violated this provision in four ways: (1) that the use of a 5% differential is not reasonable (*id.* ¶ 37); (2) that the Postal Service's practice of using an exemplar job to set the differential is overly broad, and leads to some supervisors, who supervise more highly paid employees, being relatively undercompensated (*id.* ¶ 38); (3) that employees who work enough overtime may ultimately make more than their supervisors, particularly if that supervisor is exempt from overtime (*id.* ¶ 40); and (4) that employees may receive raises and cost of living adjustments that reduce or eliminate the differential between them and their supervisor (*id.* ¶ 41).

None of these complaints state a claim for *ultra vires* activity on the part of the Postal Service. Title 39 U.S.C. § 1004(a) states only that the Postal Service "shall [have] the policy [of providing] an adequate and reasonable differentials in rates of pay." The Postal Service, as Plaintiff acknowledges, did create such a policy, dividing employees into categories, and using the categories to create a differential for supervisors who supervise each category. (Compl. ¶ 38)

Ultimately, NAPS' claims amount to an assertion that there is a better way in NAPS' view to maintain a pay differential. As an example, NAPS asserts that, in some circumstances such as overtime, an individual supervisor may make less than some employees he or she supervises. (Opp. at 16-17) But such anomalies do not render the Postal Service's overall policy

to provide a pay differential between supervisors and line employees *ultra vires*. The statute does not require that the Postal Service ensure that every supervisor makes more than every line employee in every possible situation, and certainly does not contain a "clear and mandatory" directive to that effect.

Similarly, while NAPS argues the Postal Service's established target differential of 5% is inadequate, it points to no statutory basis to impose a higher figure. The statute requires only that the differential should be "adequate" and "reasonable," neither of which terms have only one reasonable interpretation. *See National Ass'n of Postal Supervisors v. United States Postal Service,* 602 F.2d 420, 435 (1979) (holding that adequate and reasonable were undefined terms that the Postal Service was entitled to interpret, and that a court "cannot substitute its own judgement of what is adequate and reasonable for that of the Postal Service"). As such, the Postal Service's actions, because they are based on a reasonable interpretation of the statute, are not *ultra vires* just because NAPS offers another interpretation.

In the above-referenced 1979 decision, the D.C. Circuit remanded the case to the district court for further factual development because the district court had found that the Postal Service had "not considered" the differential requirement when determining salaries, which would violate the clear statutory directive of § 1004(b). *Id*. at 439. Here, by contrast, Plaintiff acknowledges in the Complaint that the Postal Service considered the differential requirement and NAPS simply asserts that the amount of the differential is too low in its opinion. As the Postal Service considered the differential requirement and exercised its discretion in setting the amount, the Postal Service did not engage in *ultra vires* conduct and NAPS' claim thus should be dismissed.

*The Postal Service's assessment of private sector pay is not ultra vires*

Plaintiff alleges that the Postal Service has violated 39 U.S.C. §§ 101(c) and 1003(a) by failing to pay its supervisors comparably to the private sector. Section 101(c) states that "the Postal Service shall achieve and maintain compensation for its officers and employees comparable to the rates and types of compensation paid in the private sector of the economy of the United States." Section 1003(a) similarly states that "It shall be the policy of the Postal Service to maintain compensation and benefits for all officers and employees on a standard of comparability to the compensation and benefits paid for comparable levels of work in the private sector of the economy."

NAPS alleges the Postal Service violated those provisions by not surveying private sector compensation sufficiently often, by not offering locality pay, and by implementing a "pay for performance" system which provided, on average, lower salary increases than the private sector. (Compl. ¶¶ 23-30) Plaintiff also argues that the difference is even greater after considering other forms of compensation, such as bonuses and stock options, but not pension or health care contributions. (Compl. ¶ 34)

Those allegations do not state a claim for relief. Nothing in the Complaint alleges that the Postal Service has violated a clear statutory directive. NAPS instead makes vague allegations that individual parts of the Postal Service compensation package lag behind some private employers. The Postal Service is statutorily required to have a policy of compensating its officers and employees comparably to the private sector, but the statute does not specify what methods or benchmarks the Postal Service should use to achieve this. It certainly does not prevent the Postal Service from using a "pay for performance" model when paying supervisors. Such a system would obviously compensate supervisors more generously when the Postal Service was doing

well financially as opposed to now, when it is insolvent, but this does not make the system *ultra vires*.

### *NAPS's request for damages is not an appropriate remedy under non-statutory review*

Though the complaint's prayers for relief are framed as requests for an injunction, NAPS also requests an order to pay retroactive wages due to the Postal Service's allegedly incorrect salary decisions. Complaint at ¶ 116(B)(ii). This is, in effect, a request to order the Postal Service to pay damages through non-statutory review. However, damages are not an appropriate remedy under non-statutory review, which is designed to correct an agency's *ultra vires* actions on a forward going basis, not to create a general civil action against the federal government for damages whenever a statute is violated. *See Bowen v. Georgetown University Hospital*, 488 U.S. 204, 216-17 (1988) (explaining that under APA review (which is significantly broader in scope than non-statutory review, rules are prospective in application and adjudications address matters retrospectively) (Scalia, J., concurring); *Armendariz-Mata v. U.S. Dept. of Justice*, 82 F.3d 679, 682 (5th Cir. 1996) (explaining that APA review does not encompass claims for monetary relief).

### *The Postal Service's workforce motivation policies are not ultra vires*

NAPS argues that the Postal Service has violated 39 U.S.C. § 1004(a) by not providing compensation that is sufficient to "maintain a well-motivated workforce."  (Compl. ¶ 98). Section 1004(a) states that "[i]t shall be the policy of the Postal Service to provide compensation, working conditions, and career opportunities . . . that reflect[] the essential importance of a well-trained and well-motivated force to improve the effectiveness of postal operations."

NAPS, however, fails to allege that the Postal Service does not have policies attempting to maintain a well-motivated workforce. Rather, it points to two surveys that it alleges show that the Postal Service has a higher percentage of employees who are "not engaged" or "actively

9

disengaged" than in most of the private sector. NAPS then alleges that the Pay for Performance system used for EAS employees is overly complex, and causes demoralization among supervisors.[5]

Those allegations are far from alleging *ultra vires* activity. NAPS does not allege that the Postal Service is unconcerned with morale. The existence of the Gallup survey that NAPS cites shows that the Postal Service is concerned about the engagement of its personnel. Rather, NAPS effectively alleges that it has better ideas about how to motivate postal personnel than the Postal Service, and it would like this Court to impose those ideas. That is not the purpose of non-statutory review, which gives courts the power to require government entities to comply with "clear and unambiguous" directives, not to substitute a plaintiff's policy judgement for that of the agency. *See e.g. International Ass'n of Machinists & Aero. Workers v. Griffin*, 590 F. Supp. 2d 171, 177 (D.D.C. 2008).

### *The Postal Service's recruitment and retention practices are not ultra vires*

Similarly, NAPS alleges that the Postal Service has violated section 39 U.S.C. 1004(a) by failing to provide sufficient compensation to attract qualified supervisors. (Compl. ¶ 99) Section 1004(a) states that "[i]t shall be the policy of the Postal Service to provide compensation, working conditions, and career opportunities that will assure the attraction and retention of qualified and capable supervisory and other managerial personnel[.]"

---

[5] NAPS's allegations, if taken as true for purposes of this motion, do not support such an inference. NAPS's own allegations indicate that supervisors are at a similar level of motivation to other Postal Service employees, who are not subject to PFP. *See* Complaint at ¶ 43-44 ("The survey data for engagement among Field EAS employees tracks the poor engagement of Postal Service employees overall.")

NAPS provides almost no basis for its claim that the Postal Service is unable to attract qualified personnel due to its compensation policies. It alleges that one-fifth of EAS grade 17 positions are not filled within 90 days, and speculates that that number may be higher due to job reposting. (Compl. ¶ 48) It does not allege that this number is unusually high, or that the positions are not eventually filled with qualified supervisors. The Complaint also alleges that some union-represented line employees do not find supervisor jobs sufficiently attractive to apply for them, and that it is difficult to recruit supervisors in high wage cities. (Compl. ¶¶ 49-50) NAPS does not allege that postal supervisors are not qualified, or that the Postal Service is ultimately unable to fill new positions with qualified supervisors. As such, even if non-statutory review *were* a vehicle to allow NAPS to allege that its policy ideas are better than those of Postal Service, it fails to do so here. There is certainly no allegation that the Postal Service has violated a clear and unambiguous statutory requirement.

### *The new conclusory arguments within NAPS's opposition memorandum do not cure the defects in its Complaint*

NAPS argues in its opposition memorandum that the Postal Service failed to act in good faith when making its 2016-2019 Pay Package decision, and did not consider the relevant statutory factors, such as comparability. The only evidence NAPS provides that the Postal Service did not consider the statutory factors, however, is that it reached decisions that NAPS does not agree with, including allegedly paying some supervisors what NAPS considers below market wages and allegedly paying some supervisors less than their employees under certain circumstances. (Opp. at 18) From this policy disagreement, NAPS argues the Court should infer that the Postal Service failed to act in good faith, and did not consider the relevant statutory factors. (*Id.*) Those are not reasonable inferences. The fact that the Postal Service did not agree with NAPS's policy proscriptions does not mean that the Postal Service failed to act in good

faith when balancing all of the relevant statutory factors, as the court discussed in *NAPS v. USPS*, 602 F.2d at 435.

Similarly, NAPS claims that, the Postal Service "fail[ed] to explain its reasons for rejecting NAPS's proposed changes [to the pay package,]" and suggests that the court should infer that the Postal Service did not consider those recommendations. (Opp. at 19) This allegation appears to go beyond the complaint, which alleged that the Postal Service had rejected most (but not all) of NAPS's recommendations, after consultation by "meetings, letters, and emails" with NAPS, and that the Postal Service did not provide an explanation of its decisions along with its final decision. However, the Complaint did not allege that the Postal Service failed to consider their recommendations. (Comp. ¶¶18-19, 52-54) Not only should the Court not infer that the Postal Service violated its statutory requirement to consider NAPS's proposed changes, but the Plaintiff's own Complaint contradicts its argument. NAPS admits in its Complaint that the Postal Service met with it both in person and electronically to discuss its pay package decision. (Compl. ¶¶18-19) The allegation that the Postal Service failed to give NAPS a formal explanation of its decision along with its final pay package does not support an inference that the Postal Service did not consult with NAPS and consider its recommendations, particularly when NAPS acknowledges that the Postal Service met with it, and adopted some of its recommendations.

### The PRA does not give NAPS the right to represent postmasters or other managers

*NAPS's interpretation of § 1004(b) is incorrect and unworkable*

Section 1004(b) creates three types of organizations: those that represent a majority of supervisors, those that represent at least 20 percent of postmasters, and those that represent a substantial percentage of managerial employees. NAPS argues that, once an organization fits any of those three categories, it is entitled to participate in consultations representing its members in any of the three categories. (Opp. at 23) It further argues that postmasters are merely a subset of supervisors and therefore properly represented by a supervisor's organization. (*Id.* at 22-23) Those interpretations are both implausible and unworkable.

First, the statute states that a postmasters' organization must be one "other than an organization representing supervisors," and a managers' organization must be one "other than an organization representing supervisors or postmasters." § 1004(b). While § 1004 is the product of multiple pieces of legislation, and may not be not a model of clarity, it is unambiguously clear that an organization cannot fill more than one of the three roles. The text of the PRA forbids a supervisors' organization from representing non-supervisors, such as postmasters and managers.

NAPS's argument that postmasters are included in the broader supervisor category is also belied by the text and history of § 1004(b). In 2003, Congress passed the Postmasters Equity Act, which gave postmasters the consultation rights that supervisors already had, and which postmasters had previously not enjoyed. *See* S. Rep. No. 108-12 (2003), 2003 WL 21734244, at 1-2 ("[the bill] would provide to the nation's postmasters the same rights as those accorded to postal supervisors"). Congress would not have needed to pass that act if postmasters were merely a different kind of supervisor already included within the original § 1004(b). Congress explained as much in the report, explaining that there are two distinct categories of employees who "are

under the same pay and compensation system, but . . . discuss these issues separately with the Postal Service." *Id.* at 2. NAPS accuses the Postal Service of a selective reading of the legislative history, noting one reference to postmasters as supervisors, but NAPS's reading would require disregarding the entire text and history of the Postmasters Equity Act, and the reason for its existence. (Opp. at 25)

NAPS argues that, once an organization is designated as one of the three kinds of organizations, it has consultation rights for all of its members, regardless of which category those members fall into. This would mean, for example, that an organization representing 20 percent of postmasters and a single supervisor would be entitled to participate in the consultation process for supervisor salaries. Congress would not have required membership by a majority of supervisors to recognize a supervisors' organization, while only requiring 20 percent of postmasters for a postmaster's organization if it had intended postmasters organizations be able to consult about supervisor salaries to the same extent as a supervisor's organization.

Even if NAPS's interpretation of the PRA were marginally plausible, the Postal Service's is not so unreasonable as to be *ultra vires*. *See e.g. Nat'l Air Traffic Controllers Ass'n AFL-CIO v. Fed. Serv. Impasses Panel,* 437 F.3d 1256, 1264, (D.C. Cir. 2006) (no *ultra vires* action when both parties present a compelling interpretation of the statute).

### *Determining whether NAPS represents non-supervisors would not require that the court make any factual determinations*

NAPS argues that the court should not address the scope of NAPS's representation at this stage of the litigation, because it would require the court to consider factual questions, such as the number of supervisors, postmasters and line employees that would fit within each category. (Opp. at 25-26) This misunderstands the situation. Though NAPS is correct that questions of which postal employees fit into which categories may need to be resolved at some point, the

14

Court should not to do so now. Indeed, until the scope of a group is determined, an individual's placement in any particular group cannot be made.

The situation presented in this case is fundamentally similar to questions faced by the National Labor Relations Board concerning what group of employees is an appropriate "unit" of representation by a labor organization. In order to resolve that purely legal question, the board (and courts reviewing its decisions) do not delve into whether individual employees fit within the unit or not. Rather, they first determine the scope of the appropriate unit for collective bargaining. The only question that the Court should answer at this stage is whether NAPS is entitled to represent non-supervisors. The answer to this question is a pure matter of law under the PRA – an organization may represent either supervisors, postmasters, or managers, but not all of them, and line employees fit none of these categories.

### *The NLRA does not conflict with the PRA*

Though NAPS correctly notes that the NLRA applies to the Postal Service only to the extent that it does not conflict with the PRA, NAPS's argument that there is a conflict about whom NAPS may represent between the NLRA and the PRA misses the mark. As a matter of statutory construction, there is a strong preference to read statutes in a way that harmonizes them, rather than making them conflict, and repeals by implication of earlier statutes by subsequent ones is disfavored. *See e.g. Hunter v. FERC*, 711 F.3d 155, 159 (2013) ("As the Supreme Court has frequently observed, "repeals by implication are disfavored") (quoting *Universal Interpretive Shuttle Corp. v. Washington Metropolitan Area Transit Commission*, 393 U.S. 186, 193 (1968)). Under the Postal Service's interpretation of the PRA, no conflict exists.

PRA section 1004 forbids including line employees who are subject to collective-bargaining in a supervisors' organization. Similarly, supervisors are not included in NLRA

15

bargaining units. Because both statutes separate supervisors from line employees in the same group or unit, there is no conflict to resolve. Neither allows NAPS to represent line employees, and this Court should not adopt an interpretation of the PRA that creates an unnecessary conflict.

## Conclusion

Because NAPS has failed to allege any actions that are *ultra vires*, the Complaint should be dismissed in its entirety. In addition, Counts IV and V of the Complaint also should be dismissed to the extent that those Counts are based on NAPS's seeking representation and consultation rights for non-supervisors.

    Respectfully submitted,

    JESSIE K. LIU
    D.C. BAR # 472845
    United States Attorney

    DANIEL F. VAN HORN
    D.C. BAR # 924092
    Civil Chief

    By:   /s/ Jeremy S. Simon
    JEREMY S. SIMON, D.C. BAR #447956
    Assistant United States Attorney
    555 4th Street, N.W.
    Washington, D.C. 20530
    (202) 252-2528
    Jeremy.simon@usdoj.gov

    *Counsel for United States Postal Service*

OF COUNSEL:

ERIN E. LYNCH
Chief Counsel, Labor Law
Office of the General Counsel
United States Postal Service

TERENCE F. FLYNN
Attorney, Employment and Labor Law

Office of the General Counsel
United States Postal Service

MARK A. LIPPELMANN
Attorney, Employment and Labor Law
Office of the General Counsel
United States Postal Service

MICHAEL D. WEAVER
Attorney, Legal Strategy
Office of the General Counsel
United States Postal Service