UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL ASSOCIATION OF<br>POSTAL SUPERVISORS,<br><br>*Plaintiff*,<br><br>v.<br><br>**UNITED STATES POSTAL SERVICE**,<br><br>*Defendant*. | )<br>)<br>)<br>)<br>)<br>)  Case No. 1:19-cv-2236-RCL<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION

The National Association of Postal Supervisors ("the Association") is an organization representing active and retired supervisors of the United States Postal Service ("USPS" or "Postal Service").

The Association sued USPS alleging that USPS undercompensated postal supervisors in violation of federal statute. The Association also alleged that USPS violated federal law by declining to recognize the Association's authority to represent postmasters and certain other managers. USPS moved to dismiss the complaint, arguing that the statutory provisions cited by the Association do not provide a private cause of action. The United Postmasters and Managers of America ("Postmasters") intervened in support of USPS and filed a motion to dismiss the Association's claim that it had authority to represent postmasters.

Upon consideration of the complaint (ECF. No. 1), motions to dismiss (ECF Nos. 11, 19), memorandum in opposition (ECF No. 16), replies (ECF Nos. 20, 21), and exhibits filed in support thereof, the Court will **GRANT** USPS's and Postmasters' motions to dismiss.

1

## I. BACKGROUND

### A. The Postal Reorganization Act

The Postal Reorganization Act of 1970 ("PRA"), Pub. L. No. 91-375, 84 Stat. 719 (1970), created USPS as "an independent establishment of the executive branch of the Government of the United States," 39 U.S.C. § 201, with broad internal operating powers, *id.* § 401. Under the PRA, USPS establishes compensation policies after negotiations with employee representatives. *See id.* §§ 1202–09. Collective bargaining units represent non-managerial employees in discussions governed by National Labor Relations Board ("NLRB") policies. *Id.* § 1202.

In contrast, supervisory and managerial personnel are expressly excluded from collective bargaining and NLRB policies. *Id.* § 1202(1). Instead, managerial and supervisory personnel are represented by "recognized organizations" which are "entitled to participate directly in the planning and development of pay policies and schedules, fringe benefit programs, and other programs relating to supervisory and other managerial employees." *Id.* § 1004(b). Recognized organizations review USPS's compensation proposals and provide recommendations. *Id.* § 1004(d)(1)(B). USPS is not required to accept but only "give any recommendation from the organization full and fair consideration." *Id.* § 1004(d)(1)(C).

If a recognized organization is dissatisfied with a USPS compensation decision, the organization may request the creation of a fact-finding panel. *Id.* § 1004(f)(1). USPS and the recognized organization present their compensation proposals to a panel of three experts on managerial compensation policies. *Id.* §§ 1004(f)(2)–(3). After reviewing both sides, the panel issues its own recommendations to USPS. *Id.* § 1004(f)(4). Just as with the recognized organization's recommendations, Congress only instructed USPS to "give full and fair consideration to the panel's recommendation." *Id.* § 1004(f)(5).

Separately, a recognized organization may ask for a panel to review the "effectiveness" of USPS employment policy procedures. *Id.* § 1004(g). Under this process, the panel provides recommendations directly to Congress. *Id.*

### B. Factual Background

This action involves proposed compensation policies for Executive and Administrative Schedule ("EAS") employees, described as "the nearly 50,000 managers, supervisors, and other middle-management employees who are not members of collective bargaining units." Compl. ¶ 1, ECF No. 1. The Association, a recognized organization, claims to represent approximately 27,000 active and retired EAS employees, which include "active and retired USPS managers, supervisors, *postmasters*, and other professionals." *Id.* at ¶ 2 (emphasis added).

USPS sent the Association a proposed EAS pay and benefits package for fiscal years 2016–19 that addressed areas such as "Pay for Performance, Salary Ranges, Health Benefits Contribution, Promotional Pay Increase, Position Upgrade, and Work Groups." *Id.* at ¶¶ 16–17. For the next nine months, the Association provided recommendations to USPS regarding changes to the pay package "via meetings, letters, and emails." *Id.* at ¶ 18.

USPS then issued its final proposed pay package. *Id.* at ¶ 19. Dissatisfied with USPS's decision, the Association requested a factfinding panel to review USPS's proposal in accordance with the dispute resolution mechanism provided by 39 U.S.C. § 1004(f). *Id.* at ¶ 20. Both USPS and the Association presented exhibits and witnesses to the panel during a two-day hearing. *Id.* at ¶ 64. Afterwards, the panel issued a report incorporating several of the Association's recommendations, including pay increases for certain Association-represented employees, a revision of salary differentials between supervisors and their subordinates, and the establishment of a working group to review future compensation policies. *Id.* at ¶¶ 66–68. In response, USPS

issued a revised pay package agreeing to engage a working group but declining to implement pay increases or adjust the differential. *Id.* at ¶¶ 69–74.

The Association then instituted this action raising the following claims:

1) USPS violated 39 U.S.C. § 1003(a) and 39 U.S.C. § 101(c) by failing to pay comparably to the private sector (*see id.* ¶¶ 80–87);

2) USPS violated 39 U.S.C. § 1004(a) by failing to provide for an adequate supervisory differential adjustment (*see id.* at ¶¶ 88–92);

3) USPS violated 39 U.S.C. § 1004(a) by failing to provide sufficient compensation to attract or retain qualified management personnel and failing to establish a compensation program adequate to maintain a well-motivated workforce (*see id.* at ¶¶ 93–99);

4) USPS violated 39 U.S.C § 1004(b) by failing to consult the Association regarding compensation for different categories of employees (*see id.* at ¶¶ 100–06); and

5) USPS violated 39 U.S.C. § 1004(b) by refusing to recognize the Association's authority to represent postmasters (*see id.* at ¶¶ 107–15).

The complaint seeks a declaratory judgment, an injunction requiring USPS to adjust future pay, and purported injunction requiring USPS to provide retroactive pay increases. *See id.* at ¶ 116. USPS moved to dismiss the complaint, arguing that the PRA provisions cited by the Association do not provide a private cause of action. *See* USPS Mot. to Dismiss 6–9, ECF No. 11. USPS further argued that the Association did not have authority to represent certain groups, including employees, managers, and postmasters. *See id.* at 15–20. Intervenor Postmasters separately moved to dismiss Claim 5, arguing that Postmasters—not the Association—was the recognized organization with the authority to represent postmasters. *See* Postmasters Mot. to Dismiss, ECF No. 19.

## II.  LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) requires courts to dismiss any case wherein the plaintiff has failed to state a legal claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

4

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts must construe the pleadings broadly and assume that the facts are as the plaintiff alleges; however, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Additionally, courts are not obligated to "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Moreover, "a plaintiff who fails to show that the law authorizes him to bring his lawsuit fails to state a claim upon which relief can be granted." *Eagle Tr. Fund v. U.S. Postal Serv.*, 365 F. Supp. 3d 57, 63 (D.D.C. 2019) (citing *Sacks v. Reynolds Sec., Inc.*, 593 F.2d 1234, 1239 (D.C. Cir. 1978)).

## III. ANALYSIS

### A. Private Cause of Action

It is well-settled that the "violation of a federal statute alone is inadequate to support a private cause of action." *Tax Analysts v. IRS*, 214 F.3d 179, 185 (D.C. Cir. 2000). Instead, courts must first look to the statute's text to determine if the statute provides an express cause of action. *See Johnson v. Interstate Mgmt. Co., LLC*, 849 F.3d 1093, 1097 (D.C. Cir. 2017) ("[i]f the text of a statute does not provide a cause of action, there ordinarily is no cause of action.").

Implied causes of action are permitted "on rare occasions," but only if the court finds a clear congressional intent "to create a 'private right' and a 'private remedy.'" *Id.* (citing *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)). "[T]hat is a high bar to clear" because "[the court] ha[s] to conclude that Congress *intended* to provide a cause of action even though Congress did not expressly say as much in the text of the statute." *Id.* at 1097–98 (emphasis in original).

If a statute does not provide an express or implied cause of action, a plaintiff suing a federal agency in federal court may obtain a legal remedy through the Administrative Procedure Act

("APA"). *See* 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review.").

Non-statutory review is the final option for judicial review of administrative agency activities. *See Mittleman v. Postal Reg. Comm'n*, 757 F.3d 300, 307 (D.C. Cir. 2014). However, non-statutory review is unavailable if the court finds either that (a) Congress intended to preclude judicial review or (b) the issues involved are better left to agency discretion. *Nat'l Ass'n of Postal Supervisors v. U.S. Postal Serv.* ("*NAPS*"), 602 F.2d 420, 429–30 (D.C. Cir. 1979). When conducting non-statutory review, a court's only role is "to determine whether the agency has acted "'ultra vires'— that is, whether it has 'exceeded its statutory authority.'" *Mittleman*, 757 F.3d at 307 (quoting *Aid Ass'n for Lutherans v. U.S. Postal Serv.*, 321 F.3d 1166, 1173 (D.C. Cir. 2003)). An agency acts *ultra vires* when it violates a "clear and mandatory" statutory provision. *See Int'l Ass'n of Machinists & Aero. Workers v. Griffin*, 590 F. Supp. 2d 171, 176 (D.D.C. 2008) (citing *Nat'l Air Traffic Controllers Ass'n AFL-CIO v. Fed. Serv. Impasses Panel*, 437 F.3d 1256, 1263 (D.C. Cir. 2006)). A statutory provision is "clear and mandatory" when it has only one unambiguous interpretation. *See Nat'l Air Traffic Controllers*, 437 F.3d at 1264.[1]

## B. The Association Cannot Sue Under Any Statutory Cause of Action.

### i. *The cited PRA provisions neither provide an express cause of action nor are susceptible to APA review.*

While the Circuit has not addressed the specific question of whether the PRA provides private causes of action, this Court and other circuits consistently find that various provisions of the PRA "do[] not indicate a Congressional intent to create a private remedy." *Nat'l Postal Prof'l Nurses v. U.S. Postal Serv.*, 461 F. Supp. 2d 24, 33 (D.D.C. 2006) (refusing to recognize a cause

---

[1] The Association argues that an action is *ultra vires* when, in undertaking the action, the agency fails to engage in reasoned decision making. *See* Association Opp'n 14–15, ECF No. 16. The Circuit's precedent favors "clear and mandatory" as the standard for non-statutory review. *See Mittleman*, 757 F.3d at 307.

6

of action under 39 U.S.C. § 1001); *see generally Glenn v. U.S. Postal Serv.*, 939 F.2d 1516, 1520 (11th Cir. 1991) (refusing to recognize a cause of action under § 1006); *Stupy v. U.S. Postal Serv.*, 951 F.2d 1079, 1081–82 (9th Cir. 1991) (same); *Kaiser v. U.S. Postal Serv.*, 908 F.2d 47, 50–52 (6th Cir. 1990) (same); *Blaze v. Payne*, 819 F.2d 128, 129–30 (5th Cir. 1987) (refusing to recognize a cause of action under § 1001); *Gaj v. U.S. Postal Serv.*, 800 F.2d 64, 68–69 (3d Cir. 1986) (same). Because Congress enacted the PRA to increase operational efficiency, improve labor relations, and establish "a new 'businesslike' agency," *NAPS,* 602 F.2d at 430, the law does not leave room for judicial interference in USPS compensation decisions, *see id.* at 431–32.

Additionally, the Circuit has already determined that "the Postal Service is exempt from review under the Administrative Procedure Act." *Mittleman*, 757 F.3d at 305 (citing *N. Air Cargo v. U.S. Postal Serv.*, 674 F.3d 852, 858 (D.C. Cir. 2012)). This position is rooted in the plain text of the PRA, which states that, absent specific exceptions not relevant here, "no Federal law dealing with public or Federal contracts, property, works, officers, employees, budgets, or funds, including the provisions of chapters 5 and 7 of title 5, shall apply to the exercise of the powers of the Postal Service." 39 U.S.C. § 410(a).

   ii. *The cited PRA provisions neither provide an implied cause of action nor are susceptible to non-statutory review.*

The PRA provisions cited by the Association—39 U.S.C. §§ 101, 1003, and 1004—do not contain express private causes of action, nor are USPS actions subject to APA review. Therefore, the only possible way for the Association to obtain the remedy it seeks is through either (1) an implied private cause of action or (2) non-statutory review. Neither of these options are available.

Count 1 of the Association's complaint alleges that USPS's failure to maintain compensation commensurate with the private sector violates 39 U.S.C. § 101(c) and § 1003(a). *See* Compl. ¶¶ 80–87. These provisions read similarly, stating: "the Postal Service shall achieve

7

and maintain compensation for its officers and employees comparable to the rates and types of compensation paid in the private sector of the economy of the United States," 39 U.S.C. § 101(c), and "[i]t shall be the policy of the Postal Service to maintain compensation and benefits for all officers and employees on a standard of comparability to the compensation and benefits paid for comparable levels of work in the private sector of the economy," *id.* at § 1003(a). USPS's failure to conduct studies of comparable salaries in the private sector and failure to appropriately adjust EAS employees' salaries allegedly violates these provisions. *See* Compl. ¶¶ 83–87.

Of the few courts to review cases brought under § 101 or § 1003, all determined that the provisions do not provide private causes of action. *See, e.g.*, *Williams v. Brennan*, No. CV 17-1285 (TSC), 2017 U.S. Dist. LEXIS 114101, at *2 (D.D.C. Jul. 17, 2017); *Reeder v. Frank*, 813 F. Supp. 773, 778 (D. Utah 1992), *aff'd*, 986 F.2d 1428 (10th Cir. 1993). These courts found that Congress did not intend to imply a private cause of action or create judicially manageable standards for review. This Court agrees.

Counts 2 and 3 involve § 1004(a), which states:

> It shall be the policy of the Postal Service to provide compensation, working conditions, and career opportunities that will assure the attraction and retention of qualified and capable supervisory and other managerial personnel; to provide adequate and reasonable differentials in rates of pay between employees in the clerk and carrier grades in the line work force and supervisory and other managerial personnel; to establish and maintain continuously a program for all such personnel that reflects the essential importance of a well-trained and well-motivated force to improve the effectiveness of postal operations; and to promote the leadership status of such personnel with respect to rank-and-file employees, recognizing that the role of such personnel in primary level management is particularly vital to the process of converting general postal policies into successful postal operations.

39 U.S.C. § 1004(a). The Association alleges that USPS's use of a different salary differential adjustment and calculation method than the private sector, *see* Compl. ¶¶ 90–92, resulted in "inadequate pay policies and schedules" and impeded the attraction and retention of qualified management, thus violating § 1004(a), *see id.* at ¶¶ 96–99.

8

The Circuit previously ruled on the merits of a case involving the differential requirement in § 1004(a) but declined to address the question of whether the Association had a private cause of action. *See NAPS*, 602 F.2d at 429–32. The *NAPS* court found that it had jurisdiction to hear the case under 28 U.S.C. § 1339,[2] *id.* at 427, but also that Congress intended for courts to give strong deference to USPS discretion, *see id.* at 441. In ruling on the merits, the Circuit stated that "[s]ection 1004(a) does not set a fixed differential" and that "Congress chose instead to leave the precise differential to the discretion of the agency, mandating only that the differential at any given time be 'adequate and reasonable.'" *Id.* at 433. The Circuit determined it could not reverse Congress's decision to give deference to USPS's determination of the differential; or in other words, that the courts could not "through statutory construction create more precise standards and rights than Congress elected to create." *Id.*

Regardless, following *Sandoval*, it is clear that neither the differential requirement nor the mandate to develop a "well-trained and well-motivated force" in § 1004(a) generates an implied private cause of action because the text does not display a congressional intent to create a "private right" or a "private remedy." *See Sandoval*, 532 U.S. at 286.

Relatedly, even though *NAPS* referred to the case as a "nonstatutory review proceeding," *NAPS*, 602 F.2d at 432, the court determined that Congress did not intend for judicial review of USPS action, making the case ineligible for non-statutory review under the modern "clear and mandatory" standard. *See id.* at 431–32 ("Congress intended to vest the Postal Service with broad discretion in setting compensation policies and to limit judicial oversight of the Postal Service's exercise of that discretion.").

---

[2] 28 U.S.C § 1339 provides: "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to the postal service."

9

Counts 4 and 5 allege violations of § 1004(b) for failure to consult with and recognize the Association's representation of certain "headquarters" and "area" employees as well as postmasters. *See* Compl. ¶¶ 100–15. Section 1004(b) states:

> The Postal Service shall provide a program for consultation with recognized organizations of supervisory and other managerial personnel who are not subject to collective-bargaining agreements . . . Upon presentation of evidence satisfactory to the Postal Service that a supervisory organization represents a majority of supervisors, that an organization (other than an organization representing supervisors) represents at least 20 percent of postmasters, or that a managerial organization (other than an organization representing supervisors or postmasters) represents a substantial percentage of managerial employees, such organization or organizations shall be entitled to participate directly in the planning and development of pay policies and schedules, fringe benefit programs, and other programs relating to supervisory and other managerial employees.

39 U.S.C. § 1004(b).

While the Circuit has not addressed § 1004(b), this Court underscored the provision's discretionary nature by reading it to require that USPS "'discuss its proposed . . . policies with the [Association] . . . in a meaningful, good faith manner'" but further noted that "'[u]nder no circumstances, however, does that mean that the Postal Service can be forced to accept [the Association's] proposals . . . on policies or even be compelled to negotiate those policies with [the Association].'" *Nat'l Ass'n of Postmasters v. Runyon*, 821 F. Supp. 775, 778 (D.D.C. 1993) (quoting *NAPS*, 602 F.2d at 436).

The Association claims that USPS's previous denial of its request to represent postmasters was incorrect. *See* Compl. ¶114. USPS and intervenor Postmasters maintain that the Association does not have the legal authority to represent postmasters. USPS Mot. to Dismiss 15–19; *see also* Postmasters Mot. to Dismiss.

Overall, there are two fundamental reasons why 39 U.S.C. §§ 101(c), 1003(a), and 1004(a)–(b) are not subject to judicial review. First, when a statute is "phrased as a directive to federal agencies engaged in the distribution of public funds . . . there is far less reason to infer a

10

private remedy." *Sandoval*, 532 U.S. at 289 (internal quotations and alterations omitted). Because the cited PRA provisions contain the type of directive language referenced by the Supreme Court as antithetical to implied private causes of action, it seems clear that Congress did not intend for these provisions to create such remedies. Moreover, the Circuit previously concluded that appealing to Congress—rather than the courts—is the proper recourse to resolve compensation-related disputes. *See NAPS*, 602 F.2d at 435 ("[i]f the Associations are dissatisfied and seek additional guarantees, they must carry their plea to the legislature.")

Second, § 1004 provides for remedies other than judicial review which the Association failed to exhaust. "'[N]o one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'" *Ass'n of Flight Attendants-CWA v. Chao*, 493 F.3d 155, 158 (D.C. Cir. 2007) (quoting *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51 (1938)). If the Association is dissatisfied with USPS policies enacted pursuant to § 1003 or § 1004, the Association may request the creation of a fact-finding panel to provide recommendations that USPS must consider. 39 U.S.C. § 1004(f). Separately, the Association may request the creation of a panel to review the effectiveness of the procedures and provisions of §§ 1003 and 1004 and make recommendations to Congress for changes. *Id.* § 1004(g).

After nine months of negotiating the details of the proposed FY 2016–19 pay package with USPS, "via meetings, letters, and emails," the Association requested a factfinding panel to review the compensation proposal in accordance with § 1004(f). Compl. ¶¶ 18, 20. The panel delivered its report, *id.* at ¶ 66, and USPS issued a revised pay package which the Association felt did not adequately incorporate the panel's recommendations. Association Opp'n 7. Then, the Association instituted the present action instead of requesting another panel pursuant to § 1004(g), as USPS argues was required. USPS Mot. to Dismiss 3. The Association contends that § 1004(g) is not

mandatory because "it is a process that can be invoked at any time—without connection to a dispute." Association Opp'n 7 n.3.

The Association had a statutory remedy—§ 1004(g)—which it chose not to pursue. While failure to exhaust an optional remedy is not an independent ground to dismiss an action, the Association's choice not to exercise an available option is further evidence of non-reviewability. Congress's explicit addition of an alternate dispute resolution mechanism in the PRA indicates that Congress did not intend for implied judicial review. Additionally, though the Association is frustrated that USPS did not *accept* the panel's recommendations, the Association has not sufficiently pleaded that USPS failed to *consider* its recommendations, which is all USPS is required to do by statute. *See* 39 U.S.C. § 1004(f)(5).

The PRA leaves significant room for agency discretion and provides specific procedures other than judicial review to challenge agency action. At this stage, only Congress can provide the remedy the Association seeks.

### C. Even if the Cited PRA Provisions Were Subject to Non-Statutory Review, the Association Has Not Sufficiently Pleaded that USPS Acted *Ultra Vires*.

Since (1) *ultra vires* activity requires the violation of a clear and mandatory directive with only a single interpretation and (2) the Association has not shown that USPS's conduct violated a such a directive, the Association has not sufficiently pleaded that USPS acted *ultra vires*.

As stated above, 39 U.S.C. § 101 and § 1003 provide a broad directive to USPS to establish a policy for providing compensation commensurate with the private sector. Congress did not dictate how USPS should create such a policy or what metrics to use. Other than offering anecdotal evidence about how USPS's compensation differs from the private sector, *see* Compl. ¶¶ 21–22, 24–27, 30–31, 34, and providing general suggestions for how USPS could improve its

12

compensation policy, *see id.* at ¶¶ 23–24, the Association has not established how USPS violated a clear and mandatory directive in either § 101 or § 1003.

Additionally, the Circuit already determined that § 1004(a) affords USPS significant discretion in setting a salary differential. *See NAPS*, 602 F.2d at 433. The Association claims that the current differential is too low. *See* Compl. ¶¶ 38–41. The differential, when combined with accelerated overtime rates for certain non-managerial employees, can result in occasional discrepancies where supervisors are paid less than their subordinates. *See id.* However, § 1004(a) only requires that the differential determination be "adequate and reasonable" as determined by USPS; a court "cannot substitute its own judgment of what is adequate and reasonable for that of the Postal Service." *NAPS*, 602 F.2d at 435. Though the Association may disagree with USPS's differential determination, it cannot demonstrate that § 1004(a) provides a clear and mandatory directive nor that the directive was expressly violated.

The same logic follows for the provisions of § 1004(b), which are similarly left to USPS's discretion. *See Runyon*, 821 F. Supp. at 777. The Association cites USPS-commissioned surveys that demonstrate "abysmal employee engagement" as evidence that the Association's constituents have low morale due to USPS's "inadequate pay policies and schedules." *See* Compl. ¶ 98. Though the Association implicitly suggests that increasing pay would increase employee morale, the Association does not demonstrate (a) that the reason for low morale is employee pay or (b) that USPS has violated a clear and mandatory directive regarding compensation.

Finally, the Association has multiple claims stemming from USPS's alleged failure to recognize the Association's authority to represent certain groups. Compl. ¶¶ 107–15. However, these claims necessarily fail based on the "clear and mandatory" *ultra vires* review standard. The Association, USPS, and intervenor Postmasters all provided their own reasonable interpretations

13

of whether the Association can represent postmasters and certain other types of employees. *See* USPS Mot. to Dismiss 15–20; Association Opp'n 19–24; Postmasters Mot. to Dismiss; USPS Reply 13–16. Based on these submissions, § 1004(b) does not establish a single, unambiguous interpretation, meaning that the Association has not met its burden to plead that USPS's action was *ultra vires*.

## IV.   CONCLUSION

Based on the foregoing, the Court will **GRANT** USPS's and Postmasters' motions to dismiss by separate order.

**IT IS SO ORDERED.**

SIGNED this 17th day of July 2020.

_____
Royce C. Lamberth
United States District Judge