## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NATIONAL ASSOCIATION OF POSTAL SUPERVISORS**, | |
| *Plaintiff,* | |
| **v.** | **Case No. 1:19-cv-2236-RCL** |
| **UNITED STATES POSTAL SERVICE**, | |
| *Defendant.* | |

## <u>MEMORANDUM OPINION</u>

The National Association of Postal Supervisors ("the Association") alleges that the United States Postal Service ("the Postal Service") acted outside the scope of its authority under the Postal Reorganization Act of 1970, Pub. L. No. 91-375, 84 Stat. 719 ("the Act"). Compl., ECF No. 1.

The Association seeks discovery to "assist the Court in ascertaining whether and how the Postal Service has broken the law and what the remedies for those violations should be." Pl.'s Mot. for Discovery ("Pl.'s Mot."), ECF No. 36 at 2. The Postal Service opposes discovery on the ground that "the Court's review of the [Postal Service's] *ultra vires* claims . . . is appropriately limited to the administrative record." Def.'s Opp'n to Pl.'s Mot. ("Def.'s Opp'n"), ECF No. 37 at 10. There is no caselaw directly addressing whether discovery is available for an *ultra vires* challenge to Postal Service action under the Act.

Upon consideration of the parties' filings, the record, and the applicable law, the Court agrees with the Association that discovery is proper with respect to some of the Association's claims but not others. Accordingly, the Association's motion for entry of a civil discovery order is **GRANTED** in part and **DENIED** in part.

# I.   BACKGROUND

### A.  Factual Background

The Act requires the Postal Service to "fix the compensation and benefits of all officers and employees in the Postal Service." 39 U.S.C. § 1003(a). The Act states that the Postal Service "shall achieve and maintain compensation for its officers and employees comparable to the rates and types of compensation paid in the private sector of the economy of the United States." *Id.* § 101(c); *see also id.* § 1003(a) ("It shall be the policy of the Postal Service to maintain compensation and benefits for all officers and employees on a standard of comparability to the compensation and benefits paid for comparable levels of work in the private sector of the economy."). The Postal Service must "provide adequate and reasonable differentials in rates of pay between employees in the clerk and carrier grades in the line work force and supervisory and other managerial personnel." *Id.* § 1004(a). And it must "provide a program for consultation with recognized organizations of supervisory and other managerial personnel[, which] shall be entitled to participate directly in the planning and development of pay policies and schedules." *Id.* § 1004(b).

The Postal Service sent the Association a proposed pay package ("Field Pay Package") for its Field Executive and Administrative Schedule ("EAS") employees for fiscal years 2016 to 2019 in September 2017. *Nat'l Ass'n of Postal Supervisors v. USPS*, 26 F.4th 960, 968 (D.C. Cir. 2022) ("*NAPS II*"). "[T]he Postal Service consulted with the Association on the package" in the following months but ultimately rejected most of its recommendations. *Id.* The Postal Service issued its initial Field Pay Package in summer 2018. *Id.* That initial package included a five percent "Supervisory Differential Adjustment." *Id.* "The Association requested that the Federal Mediation and Conciliation Services convene a factfinding panel to review the [initial] Field Pay Package" because it believed the package violated several provisions of the Act. *Id.* The Association alleged

the Supervisory Differential Adjustment "resulted in thousands of supervisors earning less than persons who they supervised." *Id.* Regarding comparability, "the Association alleged that the Postal Service took no steps to compare compensation or benefits to the private sector before issuing the initial Field Pay Package." *Id.*

A two-day hearing was held in December 2018 and the Federal Mediation and Conciliation Services filed its report in April 2019 finding: that the "Supervisory Differential Adjustment" in the package created "unreasonable and inadequate pay differentials"; that the Postal Service "violated the Act's comparability requirement by issuing a final decision" without first conducting "any market survey into private compensation"; and that the Postal Service's "method for determining pay increases" did not "satisfy the statutory criteria for comparability." *Id.* "The factfinding panel made recommendations" for bringing the Field Pay Package into compliance with the Act. *Id.* Approximately two weeks later, "the Postal Service rejected most of the panel's recommendations and issued a final decision adhering to the differential and comparability conclusions in the [initial] Field Pay Package." *Id.*

**B. Procedural Background**

The Association then filed a Complaint on July 26, 2019, alleging that the Postal Service violated the Act. Compl. Specifically, the Association alleged that the Postal Service violated: (1) 39 U.S.C. § 1003(a) and 39 U.S.C. § 101(c) by failing to pay comparably to the private sector (*id.* at ¶¶ 80–87) ("Count I"); (2) 39 U.S.C. § 1004(a) by failing to provide for an adequate supervisory differential adjustment (*id.* at ¶¶ 88–92) ("Count II"); (3) 39 U.S.C. § 1004(a) by failing to provide sufficient compensation to attract or retain qualified management personnel and failing to establish a compensation program adequate to maintain a well-motivated workforce (*id.* at ¶¶ 93–99) ("Count III"); (4) 39 U.S.C § 1004(b) by failing to consult the Association regarding compensation

for different categories of employees (*id.* at ¶¶ 100–06) ("Count IV"); and (5) 39 U.S.C. § 1004(b) by refusing to recognize the Association's authority to represent postmasters (*id.* at ¶¶ 107–15) ("Count V"). The Association seeks a declaratory judgment, an injunction requiring the Postal Service to adjust future pay, and a purported injunction requiring the Postal Service to provide retroactive pay increases. *Id.* at ¶ 116.

The Postal Service moved to dismiss for failure to state a claim, namely, that the Association cannot lawfully represent postmasters. ECF No. 11. The United Postmasters and Managers of America ("UPMA") intervened in support of the Postal Service's position and filed its own motion to dismiss. ECF Nos. 14 and 19.

This Court granted the Postal Service's and the Postmasters' motions, finding that the Association failed to state a claim because it had not shown that the Postal Service had violated a "clear and mandatory" statutory directive. *See Nat'l Ass'n of Postal Supervisors v. USPS*, No. 19-cv-2236 (RCL), 2020 WL 4039177, at *7 (D.D.C. July 17, 2020). The Association appealed and the D.C. Circuit reversed, holding that the Act's requirements—that the Postal Service "shall" (a) consult with recognized organizations, (b) maintain "adequate and reasonable differentials in rates of pay" between supervisors and clerks and carriers, and (c) "achieve and maintain compensation for its officers and employees comparable to the rates and types of compensation paid in the private sector"—are clear and mandatory, enforceable provisions subject to *ultra vires* review. *NAPS II*, 26 F.4th at 972. The D.C. Circuit relied in large part on its earlier decision in *Nat'l Ass'n of Postal Supervisors v. USPS*, 602 F.2d 420 (D.C. Cir. 1979) ("*NAPS I*"), which it declared "good law" for the proposition that "the pay differential, comparability requirements, and requirement to consult" are subject to *ultra vires* review. *NAPS II*, 26 F.4th at 970–71. The D.C. Circuit remanded five

claims to this Court. *Id.* at 980. The present dispute implicates all but Counts III and V. Pl.'s Mot. at 7–8.[1]

The Postal Service then filed its Answer. ECF No. 33. Afterwards, the Postal Service added a Certified Index of Administrative Record. Def.'s Notice of Certified Index ("Def.'s Notice"), ECF No. 34. In response, the Association filed a motion asking this Court for a civil discovery order, arguing that the Postal Service was refusing to meet and confer and propose a discovery plan on the grounds that the case is exempted from discovery under Federal Rule of Civil Procedure 26(a)(1)(B)(i). Pl.'s Mot. at 4. The Association asked this Court to deem discovery proper and to order the parties to meet and confer and submit a proposed discovery plan pursuant to Federal Rule of Civil Procedure 26(f) and Local Civil Rule 16.3(a). Pl.'s Mot. at 1–2. The Association argues that this case is not exempted from ordinary civil discovery and seeks written discovery, depositions, and the opportunity to develop and present expert testimony. The Postal Service opposed, contending that the Court should apply the Administrative Procedure Act ("APA") record review rule and limit its review to the administrative record prepared by the Postal Service. Def.'s Opp'n at 10; Def.'s Notice. The Association replied to the Postal Service's opposition. Pl.'s Reply to Def.'s Opp'n ("Pl.'s Reply"), ECF No. 40. The Association's motion is ripe for review.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 26 and Local Civil Rule 16.3 require parties to meet and confer and propose a discovery plan unless the proceeding is exempted from initial disclosure under specific subparts of those rules, namely, Federal Rule of Civil Procedure 26(a)(1)(B) and

---

[1] The D.C. Circuit affirmed this Court's dismissal of Count III. *NAPS II*, 26 F.4th at 969. The Association apparently does not seek discovery concerning Count V, the Postal Service's failure to consult with it regarding postmasters. Pl.'s Mot. at 7 n.4.

Local Civil Rule 16.3(b). Fed. R. Civ. P. 26(f); LCvR 16.3(a). Proceedings exempted from initial disclosure include actions for review on an administrative record. Fed. R. Civ. P. 26(a)(1)(B)(i); LCvR 16.3(b)(1). This exclusion is "intended to reach proceedings that are framed as an 'appeal' based solely on an administrative record." Fed. R. Civ. P. 26 advisory committee's note (2000 amendments). The exclusion is not meant to "apply to a proceeding in a form that commonly permits admission of new evidence to supplement the record." *Id.* Judicial review under the APA is paradigmatically limited to the administrative record (the "APA record review rule"). *CTS Corp. v. EPA*, 759 F.3d 52, 64 (D.C. Cir. 2014); *see also* 5 U.S.C. § 706. A court reviewing agency action under the APA should have before it the same information the agency had when it made its decision. *CTS Corp.*, 759 F.3d at 64. Exceptions are "quite narrow and rarely invoked" and are primarily limited to cases where the procedural validity of the agency's action is in serious question or the agency affirmatively excluded relevant evidence. *Id.* If an action is not limited to the administrative record, then the Federal Rules governing discovery apply unless otherwise exempted. Fed. R. Civ. P. 26.

### III.    DISCUSSION

On remand, the Court must determine whether the Postal Service violated: (1) 39 U.S.C. § 1003(a) and 39 U.S.C. § 101(c) by failing to consider private sector pay and achieve comparability (*NAPS II*, 26 F.4th at 973–74) (Count I); (2) 39 U.S.C. § 1004(a) by failing to maintain "some" pay differential (*id.* at 972–73) (Count II); (3) 39 U.S.C § 1004(b) by refusing to consult regarding Area and Headquarters employees without providing any explanation (*id.* at 975–77) (Count IV); (4) 39 U.S.C. § 1004(b) by refusing to consult with the Association regarding postmasters (*id.* at 977–80) (Count V); and (5) 39 U.S.C. § 1004(b) by failing to give reasons for

rejecting the Association's recommendations (*id.* at 980) ("Failure to Give Reasons Claim").[2] The D.C. Circuit affirmed this Court's dismissal of Count III, so, it is not before this Court on remand. *Id.* at 969. The Association seeks discovery concerning Counts I, II, and IV. Pl.'s Mot at 2–3. The Court assumes the Association also seeks discovery concerning the Failure to Give Reasons Claim. The Association does not seek discovery concerning Count V. Pl.'s Mot. at 7 n.4.

The Association's motion asks the Court to order the parties to meet and confer and submit a proposed discovery plan. Pl.'s Mot. at 14. The Association argues that it is entitled to discovery because its claims do not arise under the APA. Pl.'s Mot. at 5. The Postal Service opposes discovery and argues that the Court should apply the APA record review rule and limit its review to the administrative record. Def.'s Opp'n at 10. Hence, to resolve the Association's motion, the Court must decide whether the APA record review rule applies to *ultra vires* review under the Act. If the record review rule applies, then the Court must limit its review to the administrative record and extra-record discovery is improper. If the record review rule does not apply, then the Court may permit discovery.

For the reasons that follow, the Court will grant in part and deny in part the Association's motion. The Court finds that *ultra vires* review under the Act is not categorically restricted to the administrative record. The Court will permit limited discovery with respect to Counts II and IV. The Court will allow the Association's proffered requests for position, location, base salary, and overtime pay data, Pl.'s Mot. at 10, and job descriptions for positions excluded from representation, Pl.'s Mot. at 14. However, the Court will not allow the Association to depose Postal Service officials regarding their internal deliberations. Def.'s Opp'n at 14 n.6. The Court will

---

[2] This claim does not correspond to any single count in the Complaint but was specifically remanded to this Court by the D.C. Circuit.

preclude discovery with respect to Count I and the Failure to Give Reasons Claim. The Court will review these two claims based on the administrative record.

**A. Non-Statutory *Ultra Vires* Review of Compensation Set Pursuant to the Act Is Not Categorically Restricted to the Administrative Record**

The Association alleges that the Postal Service acted *ultra vires* by exceeding its authority under 39 U.S.C. § 1003 and 39 U.S.C. § 1004 ("sections 1003 and 1004"). *NAPS II*, 26 F.4th at 966. The D.C. Circuit held that the Association plausibly pled agency action in excess of its delegated authority and that this Court must hear those claims on remand. *Id.* at 980. The Association seeks discovery regarding these claims to "assist the Court in ascertaining whether and how the Postal Service has broken the law and what the remedies for those violations should be." Pl.'s Mot. at 2.

The Postal Service opposes discovery and argues that review of non-APA *ultra vires* claims should be limited to the administrative record. Def.'s Opp'n at 10. Courts tend to restrict review of non-APA claims to the administrative record when they are brought in parallel to APA claims or when review under the APA is otherwise available. *Bellion Spirits, LLC v. United States*, 335 F. Supp. 3d 32, 43 (D.D.C. 2018) ("[D]istrict courts have been hesitant to permit a plaintiff asserting a constitutional challenge to agency action to avoid the APA's bar on extra-record evidence."); *Chiayu Chang v. U.S. Citizenship & Immigration Servs.*, 254 F. Supp. 3d 160, 161 (D.D.C. 2017) ("[A]llow[ing] fresh discovery, submission of new evidence and legal arguments would incentivize every unsuccessful party to agency action to allege . . . constitutional violations in order to trade in the APA's restrictive procedures for the more evenhanded ones of the Federal Rules of Civil Procedure.") (internal quotation marks omitted). This is not one of those cases. The Association has not raised a non-APA claim in parallel to an APA claim in an attempt to "avoid" the strictures of the APA. *Bellion Spirits*, 335 F. Supp. 3d at 43. As the Postal Service effectively

concedes, the Court should limit review of non-APA *ultra vires* claims to the administrative record only when it is appropriate to do so. *See* Def.'s Opp'n at 9.

The Act expressly exempts the Postal Service "from review under the Administrative Procedure Act." *N. Air Cargo v. USPS*, 674 F.3d 852, 858 (D.C. Cir. 2012); *see also* 39 U.S.C. § 410(a). This means that procedural restraints placed on agencies by the APA, which went beyond pre-existing administrative law requirements, do not apply to the Postal Service. *N. Air Cargo*, 674 F.3d at 860. Congress exempted the Postal Service from the APA because it was concerned that postal efficiency and modernization would be hampered by laws that limited the discretion of Postal Service management. *See Nat'l Easter Seal Soc. for Crippled Children & Adults v. USPS*, 656 F.2d 754, 767 (D.C. Cir. 1981). Indeed, the Postal Service enjoys broad management authority and discretion over its affairs. *See Buchanan v. USPS*, 508 F.2d 259, 263 (5th Cir. 1975). By exempting the Postal Service from the APA, Congress expressed the "particular trust" it places in the Postal Service to manage its operations. *N. Air Cargo*, 674 F.3d at 861; *see also Nat'l Easter Seal*, 656 F.2d at 767 (explaining that exemption from the APA was meant to free the Postal Service from interference with efforts to remedy management and efficiency problems identified by Congress).

The Act also sought to ensure that the Postal Service would not lose sight of its public functions and responsibilities. *See Nat'l Easter Seal*, 656 F.2d at 767. To achieve this goal, the Act imposed certain procedural and substantive constraints on compensation packages produced by the Postal Service. 39 U.S.C. §§ 1003, 1004; *see also NAPS I*, 602 F.2d at 435 (explaining that the Act requires the Postal Service to "consider" and "fulfill" a salary differential requirement). Although sections 1003 and 1004 of the Act provide the Postal Service with substantial discretion and cabin the scope of judicial review, they are not "meaningless" or "empty." *NAPS I*, 602 F.2d

at 435. These sections impose real constraints on how the Postal Service compensates its supervisory and managerial employees. *See NAPS II*, 26 F.4th at 973 (noting that "a differential must be present" and that the Act entails "some showing that it is keeping pace with rising private sector rates").

Although the APA does not apply to judicial review of Postal Service action, the APA's procedural strictures may serve Congress's goal of affording the Postal Service substantial deference and discretion. *See Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989) ("[The] principle [that review of agency action is limited to the administrative record] exerts its maximum force when the substantive soundness of the agency's decision is under scrutiny."). It is black-letter law that review of agency action under the APA is limited to the administrative record, subject to certain limited exceptions. *CTS Corp.*, 759 F.3d at 64. The Supreme Court has cautioned against under- and over-inclusive review of administrative records, stating that "review is to be based on the *full* administrative record that was before the Secretary *at the time* he made his decision." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) (emphasis added). Reviewing less than the full administrative record risks allowing a party to withhold evidence unfavorable to its case. *Walter O. Boswell Memorial Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984). Reviewing more than the full administrative record risks requiring agency officials to be prescient or allowing them to take advantage of post hoc rationalizations. *Id.* This rule also protects agencies against intrusive and costly inquiries into internal agency deliberations that might otherwise chill or impede the exercise of agency discretion. *See United States v. Morgan*, 313 U.S. 409, 422 (1941); *Oceana Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019); *Dallas Safari Club v. Bernhardt*, 518 F. Supp. 3d 535, 542–43 (D.D.C. 2021).

But the fact that the APA's administrative record review rule may serve Congress's goal of affording the Postal Service substantial discretion does not mean it categorically applies to *ultra vires* challenges to Postal Service action. There is no caselaw holding that review under the Act is subject to the record review rule. And the Court finds it significant that the text of the Act does not, by its terms, limit review of challenges under sections 1003 and 1004 to the administrative record. *See* 39 U.S.C. § 1004 (describing the process for review by a factfinding panel but failing to prescribe standards for judicial review of the panel's recommendation and the Postal Service's final decision).

Of course, exceptions to the APA administrative record review rule are quite narrow. *See District Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46, 55 (D.C. Cir. 2015) (identifying three exceptions: "(1) the agency deliberately or negligently excluded documents that may have been adverse to its decision; (2) the district court needed to supplement the record with background information in order to determine whether the agency considered all of the relevant factors; or (3) the agency failed to explain administrative action so as to frustrate judicial review"). This reflects the rule's broad applicability, which the Court is loath to ignore. But the Act specially reflects the Postal Service's unique mandate to fulfill public functions and responsibilities simultaneously with operating like a business. *See Franchise Tax Bd. of California v. USPS*, 467 U.S. 512, 519–20 (1984) ("Congress . . . wished the Postal Service to be run more like a business."); *Nat'l Easter Seal*, 656 F.2d at 767–68 (explaining that by mandating certain proceedings, the Act ensures the Postal Service does not lose sight of its public functions and responsibilities). This mandate shapes the bounds of the Postal Service's discretion and the Court's role in reviewing exercise of that discretion. *See NAPS I*, 602 F.2d at 435 (explaining that the Postal Service's duty under section 1004(a) must be measured "in light of the other standards Congress included in the Postal

[Reorganization] Act"); *NAPS II*, 26 F.4th at 975 (explaining that it is the ultimate responsibility of the judiciary to determine the bounds of administrative discretion).

In other words, the Act must be evaluated on its own terms. The Court declines to import the APA record review rule wholesale, which means that in at least some *ultra vires* review cases, discovery will be appropriate. The Court acknowledges that subjecting the Postal Service to potentially more discovery than agencies may cut against the purpose of exempting the Postal Service from the APA. But as already discussed, the Postal Service is supposed "to be run more like a business," and businesses are subject to discovery in the ordinary course of litigation. *See Franchise Tax Bd. of California*, 467 U.S. at 519–20. So, the special status and purpose of the Postal Service cuts both ways. Additionally, because the Postal Service is exempt from the APA, it is subject to fewer procedural strictures, strictures which ordinarily ensure the development of an administrative record. *See Occidental Petroleum Corp. v. S.E.C.*, 873 F.2d 325, 339 (D.C. Cir. 1989). As discussed in further detail below, the administrative record here apparently does not even broach one of the issues remanded by the D.C. Circuit. Pl.'s Mot. at 13–14; Def.'s Opp'n at 17–18. If this were an APA case, that would suffice to trigger the exception to the record review rule that applies "where the administrative record itself is so deficient as to preclude effective review," and again, suggests that the record review rule is inapt for review of at least some claims under the Act. *See Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44, 47 (D.C. Cir. 2013); *see also America First Legal Foundation v. Cardona*, 630 F. Supp. 3d 170, 187 (D.D.C. 2022) (Lamberth, J.). Finally, although the record review rule has some basis in pre-APA administrative law, this does not mean that the Postal Service's administrative decisions are necessarily limited to review under pre-APA administrative law principles. *Cf. Morris v. Runyon*, 870 F. Supp. 362, 368 n.9 (D.D.C. 1994). The Act, which created the Postal Service in 1970, suggests its own principles for

review of Postal Service action, principles that may or may not dovetail with the record review

rule depending on the precise claims at issue. *See Nat'l Easter Seal*, 656 F.2d at 756, 767–78.

      The Court does not mean to say that the record review rule is entirely inapt to review of

claims under the Act. As the Court will explain below, review of at least some of the Association's

claims resembles review under the APA enough that the Court will follow the record review rule

with respect to those claims and limit its review to the administrative record. But the Court declines

to hold that *ultra vires* review under the Act is categorically limited to the administrative record

such that discovery is always improper.

      For these reasons, rather than import the APA record review rule wholesale, the Court will

evaluate the claims remanded by the D.C. Circuit to determine whether discovery may be

appropriate in light of established exceptions to the APA record review rule and the Court's own

determination that extra-record evidence will aid in effective adjudication of the Association's

claims. *See Bellion Spirits*, 335 F. Supp. 3d at 38 (explaining that the purpose of admitting extra-

record evidence is to secure effective judicial review). If the logic behind the APA record review

rule convincingly applies to the claim at issue here such that review of that claim should be limited

to the administrative record, then the Court will apply the record review rule to that claim. If it

does not convincingly apply, then the Court will permit discovery to the extent it is consistent with

the Act and permits effective adjudication of the claim.

**B.  The Association Is Entitled to Discovery Specifically Tailored to the Questions Before the Court on Remand to the Extent that Extra-Record Evidence Will Aid the Court in Effectively Adjudicating the Association's Claims**

      At the outset, the Court notes that it is unpersuaded by the Association's contention that

the Postal Service is precluded from arguing that the case should be limited to review of the

administrative record because it failed to file an index when it filed its motion to dismiss pursuant

to Local Civil Rule 7(n)(1). Pl.'s Mot. at 6–7. Strict compliance with Local Civil Rule 7(n)(1) is not required when the administrative record is not necessary to the Court's decision. *See Arab v. Blinken*, 600 F. Supp. 3d 59, 65 n.2 (D.D.C. 2022). The issues raised in the Postal Service's motion to dismiss were purely legal and did not require the administrative record to resolve. Therefore, the Postal Service's non-compliance with Local Civil Rule 7(n)(1) does not prevent it from arguing for restricted review. With that preliminary matter out of the way, the Court will now evaluate whether extra-record discovery is appropriate or whether the scope of the Court's evidentiary review should be limited to the administrative record.

### 1. Discovery Permitted: Counts II and IV

#### (i) Count II: Failure to Maintain "Some" Pay Differential

The Association claims that the Postal Service acted *ultra vires* by failing to maintain an adequate supervisory differential (Count II). *NAPS II*, 26 F.4th at 972–73; Compl. ¶¶ 88–92. According to the Association, the Field Pay Package provides "no differential" for thousands of supervisory employees. *NAPS II*, 26 F.4th at 973. This allegedly violates 39 U.S.C. § 1004(a), which requires the Postal Service to provide "some differential" that is adequate and reasonable. *Id.* at 973. Per the D.C. Circuit, a differential "*must* be present." *Id.* (emphasis added). However, the Postal Service has broad discretion to decide the size of the differential and how it is computed. *Id.*

Whether the Postal Service violated 39 U.S.C. § 1004(a) will turn on the applicable standard. It may be the case that the Postal Service only needs to show that it considered the factors directed by the Act and reached a reasonable conclusion. In that case, review limited to the record would be appropriate. *NAPS I*, 602 F.2d at 440–41 ("[T]o prevail on remand, [the Postal Service by its] submissions must at the very least show that . . . it considered all the factors as directed by

the Postal Act and that it applied such factors in establishing adequate and reasonable salary differentials for all supervisory and other managerial personnel.").[3] Or, it may need to show that the final Field Pay Package secures at least a de minimis pay differential between all supervisory and non-supervisory employees, in which case extra-record evidence may be necessary. *See id.* at 434 ("[T]he fact that Congress refused to establish a Fixed differential does not mean that the differential guarantee is a meaningless, empty promise, one which the Postal Service can ignore at will. The Postal Act does require *Some* differential.") (emphasis added); *NAPS II*, 26 F.4th at 973 ("[T]he Postal Service [has] to indicate that it has established '*some* differential.'"). It may need to show both. The precise contours of what the Postal Service must show or what criteria the Field Pay Package must satisfy (if any) are not yet clear. Language in *NAPS I* and *NAPS II* suggest it could go either way, and the issue has not yet been briefed by the parties. At bottom, the Court has not yet determined whether it will ultimately need to consult extra-record evidence; but it does not wish to hamstring its future decision-making by foreclosing all discovery at this early juncture. For this reason, the Court will permit limited discovery relating to the question of whether the final Field Pay Package in fact results in "*some* differential." *NAPS II*, 26 F.4th at 973.

Although review of an agency's substantive decision is usually subject to the record review rule, *Esch*, 876 F.2d at 991, the Court believes that allowing discovery will ultimately aid the Court in exercising its limited role of determining "the extent of the agency's delegated authority and . . . whether the agency . . . acted within that authority" by allegedly providing no differential for thousands of employees. *NAPS II*, 26 F.4th at 970 (quoting *NAPS I*, 602 F.2d at 432). The Court's decision to allow limited discovery does not reflect a judgment on the merits. To reiterate, the Court has not yet determined the applicable standard of review or whether the Postal Service

---

[3] This example, and the examples that follow, are merely illustrative.

must provide a de minimis pay differential between all supervisory and non-supervisory employees (or something of the like). The Court will decide the ultimate merits question pursuant to the applicable standard. But given the possibility that the administrative record will be inadequate to answer this question, the Court is inclined to permit limited discovery. *See Hill Dermaceuticals*, 709 F.3d at 47.

### (ii) Count IV: Refusing to Consult Regarding Area and Headquarters Employees

The Association claims that the Postal Service failed to consult with it regarding compensation for Area or Headquarters employees that it alleges it is statutorily authorized to represent (Count IV). *NAPS II*, 26 F.4th at 974; Compl. ¶¶ 100–06. The Postal Service claims that Area and Headquarters employees are not "supervisory" or "other managerial employees" under the Act and thus the Postal Service was not obligated to consult them. *NAPS II*, 26 F.4th at 975. The D.C. Circuit found that it was unable to assess whether the Postal Service's claim was plausible because the Postal Service failed to offer any support for its position. *Id.* The D.C. Circuit has charged this Court with determining on remand which of the Area and Headquarters employees have been improperly excluded from the right of representation granted in 39 U.S.C. § 1004(b). *Id.* at 977. The issue was not raised during the factfinding proceeding and the Postal Service does not dispute that it is not addressed in the administrative record. Pl.'s Mot. at 13–14; Def.'s Opp'n at 17–18. It is clear from this mandate and the absence of relevant evidence in the administrative record that the Court must permit discovery with respect to this claim. Even if the APA record review rule applied directly, extra-record evidence (and discovery thereof) would be permitted under the exception for unexplained agency action evading judicial review. *Hill Dermaceuticals*, 709 F.3d at 47. Moreover, the Court is confused by the Postal Service's claim that there is no disagreement with the Association over the scope of representation. *Compare* Def.'s Opp'n at 17–

18 (stating there is no dispute) *with NAPS II*, 26 F.4th at 977 (describing the disputed issue) *and* Pl.'s Mot. at 13–14 *and* Pl.'s Reply at 9–10 (stating there is a dispute and providing evidence thereof). For this reason, the Court will permit discovery concerning the Association's failure to consult claim.

### 2.   Discovery Prohibited: Count I and the Failure to Give Reasons Claim

#### (i)   Count I: Failure to Consider Private Sector Pay and Achieve Comparability

The Association claims that the Postal Service acted *ultra vires* by failing to pay comparably to the private sector (Count I). *NAPS II*, 26 F.4th at 974; Compl. ¶¶ 80–87. According to the Association, the Postal Service failed to consider information the Association alleges it was required to consider, such as private sector compensation and benefit rates, failed to make a good faith determination that compensation and benefits are comparable, and failed to establish pay comparable to compensation for work in the private sector. *NAPS II*, 26 F.4th at 973–74. It is apparent from *NAPS I* and *NAPS II* that this claim will ultimately turn on whether the Postal Service adequately justified its conclusion that comparability has been achieved and maintained. *See NAPS I*, 602 F.2d at 435 (reducing comparability to whether the Postal Service properly considered and balanced relevant factors); *NAPS II*, 26 F.4th at 974 (explaining that to defeat the claim the Postal Service must "show[]" that it considered private sector compensation and benefits, "explain[]" how it achieved comparability, provide a "justification" for its conclusion that comparability was achieved, and "explain[]" its resolution of factors built into the comparability requirement). Unlike the differential requirement, which as construed by the D.C. Circuit facially suggests the existence of some non-discretionary constraints on the substance of the Field Pay Package, it is apparent that the comparability requirement implicates the procedural validity of the Postal Service's decision-making process. *See NAPS II*, 26 F.4th at 974 ("Within these bounds,

the Postal Service has broad discretion to 'achieve and maintain' comparability to the private sector using the means it sees fit."). The level of discretion called for here clearly implicates the rationales for the APA record rule. *See NAPS I*, 602 F.2d at 435 ("Some factors, like the differential requirement, may at times conflict with others, like the comparability standard. But it is for the Postal Service and the Postal Service alone to resolve those conflicts."). For this reason, the Court will not permit discovery concerning the Association's comparability claim.

*(ii) Failure to Give Reasons for Rejecting the Association's Recommendations*

The Court will not permit discovery regarding the Postal Service's alleged failure to give reasons for rejecting the Association's recommendations (Failure to Give Reasons Claim). *NAPS II*, 26 F.4th at 980. The Court sees no basis for deviating from the record review rule with respect to this claim. Whether the Postal Service gave reasons will be evident upon review of the administrative record.

**C.  The Court's Ruling Allowing Limited Discovery Is Consistent with Circuit Precedent**

Permitting discovery here is consistent with decisions of courts in this Circuit implicating the availability of discovery in *ultra vires* actions against the Postal Service. In *Bellion Spirits*, the court applied the APA record rule to review of a non-APA constitutional claim brought in parallel to an APA claim after finding that extra-record evidence was irrelevant to the constitutional claim. 335 F. Supp. 3d at 43–44. The court determined that extra-record evidence was irrelevant because applicable principles of substantive law limited review to the administrative record. *Id.* In other words, the *Bellion Spirits* court looked to the substantive rule of decision applicable to the non-APA claim to determine the evidentiary scope of its review of that claim. So too here. The Court believes that extra-record evidence may be relevant to Counts II and IV and may aid the Court in effectively adjudicating those claims under the substantive decision rules provided by the Act.

Moreover, extra-record evidence may be necessary to supplement the administrative record where it is so deficient as to preclude effective judicial review (as with Count IV and possibly count II). *See Hill Dermaceuticals*, 709 F.3d at 47. That is enough to justify discovery in the absence of a statutory command to the contrary.

Similarly, in *New York v. Biden*, the court granted the plaintiff's discovery motion where the defendants opposed only the appropriateness of *expedited* discovery for a challenge to Postal Service action, not the general availability. No. 20-cv-2340 (EGS), Minute Order (October 2, 2020); ECF No. 43. Finally, in *NAPS I*, the Association challenged Postal Service action under sections 1003 and 1004 and was permitted to engage in discovery. 602 F.2d at 427. Although the D.C. Circuit reversed the district court's determination of the scope of Postal Service's discretion to set compensation, it did not find that discovery was inappropriate. *See id.* at 441. The scarce caselaw that touches on the availability of discovery in *ultra vires* actions supports permitting limited discovery.

* * *

Because review of at least some of the claims in this case is not confined to the administrative record, discovery may proceed with respect to these claims pursuant to the Federal Rules of Civil Procedure and the Local Rules. *See, e.g.*, Fed. R. Civ. P. 26; LCvR 16.3. For claims where the Court has not authorized discovery and intends to limit its review to the administrative record (e.g., comparability), the Court will presume that the record provided by the Postal Service is complete with respect to that claim. *See Cardinal Health, Inc. v. Holder*, 846 F. Supp. 2d 203, 219 (D.C. Cir. 2012) (presuming that the administrative record is complete absent "clear evidence to the contrary"). The Court will allow some of the discovery suggested in the Association's briefing, such as the Association's proffered requests for position, location, base salary, and

overtime pay data, Pl.'s Mot. at 10, and job descriptions for positions excluded from representation, Pl.'s Mot. at 14. The Court will not allow the Association to depose Postal Service officials regarding their internal deliberations, for reasons that should now be obvious. Def.'s Opp'n at 14 n.6.

Both parties will have the opportunity to seek discovery consistent with this Memorandum Opinion. Both parties will have the opportunity to object to the scope of discovery if they are unable to agree after meeting and conferring. The Court asks that the parties confine their requests to the scope of discovery authorized in this Memorandum Opinion. The Court will defer to the parties' (hopeful) agreement on a discovery plan and resolve objections consistent with this Memorandum Opinion if and when they arise.

## IV.    CONCLUSION

For these reasons, the Court **GRANTS** in part and **DENIES** in part the Association's motion. The parties must meet and confer and jointly submit a written discovery plan and proposed scheduling order. A separate Order consistent with this Memorandum Opinion shall issue.

Date: August 15, 2023

Royce C. Lamberth
United States District Judge